ORIGINAL

FILED
JUL 2 2007
U.S. COURT OF FEDERAL CLAIMS

**BEFORE THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**CH2M HILL Hanford Group, Inc.**
***Plaintiff,***

*v.*

**The United States,**
***Defendant.***

**No. ____**

07-494 C

**COMPLAINT**

COMES NOW CH2M HILL Hanford Group, Inc. ("CH2M HILL"), by counsel, and for its Complaint, states as follows:

**Nature of the Case**

1. This Complaint arises from the Defendant's ordered changes and constructive changes to a cost reimbursement incentive contract between CH2M HILL and the United States Department of Energy ("DOE"). Under this Contract, the parties agreed that CH2M HILL would have the right to earn a total of $72,000,000 in incentive fee in Fiscal Years 2003-2006 by achieving specified performance measures. Achieving the performance measures was the only way that CH2M HILL could earn any fee under the Contract. And, if the Government did not provide CH2M HILL with sufficient funds to perform fee-bearing performance measures under this cost-reimbursement contract, CH2M HILL could never earn any fee. Accordingly, a basic premise of the Contract was that DOE would provide CH2M HILL with adequate funds to perform fee-bearing work and earn the pre-determined fee pool for the Contract. Instead, as a result of DOE's ordered and constructive changes in Fiscal Years 2003-2006, CH2M HILL was required to divert funding from fee-bearing work to non-fee-bearing work, thus losing the ability to earn fee under the Contract. Also, DOE

breached its duty to request the appropriate level of funding from Congress for Fiscal Year 2006, as required by the Contract and by the implied duty of the Government to cooperate with the contractor. Alternatively, DOE breached its duty to allocate adequate funding to the Contract from the funding that Congress did give DOE. The combined effect of these acts and omissions was that DOE actually reduced the amount of funding available.

2. To the extent DOE was unable to provide CH2M HILL with all funds required to perform the Contract, DOE was required to cooperate with CH2M HILL in processing Baseline Change Requests ("BCRs") to mitigate the effects of the changes and funding reductions. However, contrary to the Contract's requirements, DOE declined to act in a timely manner on CH2M HILL's requests for BCRs or to equitably adjust the Contract. DOE's addition of non-fee-bearing work and its failure to request adequate funding and to act on BCRs to mitigate the damages resulted in CH2M HILL being required to perform additional work for no fee and precluded CH2M HILL from performing fee-bearing work.

3. Alternatively, DOE and CH2M HILL both were mutually mistaken as to a material fact at the time the Contract was formed. Specifically, both parties believed that a certain level of funding would be provided for performance of the Contract. CH2M HILL did not assume the risk that the funding would not be provided. The lack of funding only became apparent after contract formation. Likewise, both parties believed that a certain amount of fee-bearing work would be able to be performed with the available funding and that additional, non-fee-bearing work would not be added that would divert funding from fee-bearing to non-fee-bearing work, thus depriving CH2M

HILL of the ability to earn fee. CH2M HILL did not assume the risk that the funding would be diverted to non-fee-bearing work. For these reasons, even if there had not been changes to the Contract, the Contract should be reformed to reflect the fee that the parties would have provided for payment to CH2M HILL had they known at the time of contract formation that insufficient funding would be provided to perform the Contract.

4. On October 12, 2006, CH2M HILL filed a properly certified claim under the Contract Disputes Act, 41 U.S.C. §§ 601-613, for recovery of the lost fee arising from these ordered and constructive changes and, in the alternative, for reformation of the Contract.

5. CH2M HILL has been reimbursed for its costs of performing any additional work. At issue in CH2M HILL's claim, and at issue in this appeal, is DOE's denial of CH2M HILL's ability to earn a reasonable fee as required by the Contract, the Federal Acquisition Regulation ("FAR"), and the Department of Energy Acquisition Regulation ("DEAR").

6. On February 28, 2007, DOE issued a final decision denying CH2M HILL's claim in its entirety.

## Jurisdiction

7. The U.S. Court of Federal Claims has jurisdiction pursuant to 28 U.S.C. § 1491(a) and pursuant to the Contract Disputes Act, 41 U.S.C. § 609(a).

## Background

8. CH2M HILL is a prime contractor to DOE, acting through the Office of River Protection ("ORP"), under Contract No. DE-AC27-99RL14047 (the "Contract"). CH2M HILL conducts the majority of its contractual activities on federally-owned land in southeastern Washington State on what is commonly referred to as the Hanford Site.

9. The original mission of the Hanford Site related to the production of weapons grade nuclear material. The production of weapons materials generated both solid and liquid radioactive waste which was stored in 177 large (50,000 to 1,000,000 gallon) capacity underground single- and double-shell (wall) tanks. Some of the single-shell tanks have exceeded their planned useful life. The waste within both the single- and double-shell tanks must be retrieved, treated, and disposed of in a permanent waste repository. The sites where these tanks are located are called "tank farms," and the contractor that manages them is called the "Tank Farm prime contractor."

10. The current mission of the Hanford Site is environmental management and cleanup, referred to in the Federal Budget as "Defense Site Acceleration Completion" and also as "Defense Environmental Cleanup." Under those general headings, DOE refers to the tank farms as a "2035 Accelerated Completion" project.

11. The annual appropriations and authorization acts enacted by Congress do not earmark specific funds for managing and cleaning the tank farms, but rather authorize a total amount for DOE's defense-related environmental management activities. For Fiscal Year 2006 alone, Congress, in § 3102 of Public Law 109-163, authorized more than $6 billion for DOE's Defense Environmental Cleanup activities. In the Fiscal Year 2006 budget request submitted to Congress, but not made part of the appropriations or authorization acts, the Government had estimated that more than $1.9 billion of that $6 billion would be used for "2035 Accelerated Completions."

12. For the four years covered by this Complaint (FY 2003-2006), the amount authorized by Congress for DOE's defense-related environmental cleanup work was more than $22 billion. The estimated Contract cost for those four years was $1.571

billion. Therefore, sufficient funds were authorized by Congress so that DOE could have fully funded CH2M HILL's Contract consistent with Contract Section B.3.

13. Lockheed Martin Hanford Company ("LMHC") became the Tank Farm prime contractor after DOE established the ORP in 1998. Specifically, LMHC and DOE entered into Contract No. DE-AC06-99RL14047 on September 30, 1999.

14. CH2M HILL purchased LMHC in December 1999. Modification M006 to Contract No. DE-AC06-99RL14047, dated December 29, 1999, recognized LMHC's name change to CH2M HILL Hanford Group, Inc. Modification M006 stated that "all rights and obligations of the Government and the Contractor under this contract are unaffected by this change."

15. Modification M026, dated October 18, 2000, changed the contract number from DE-AC06-99RL14047 to DE-AC27-99RL14047. This numbering change made no substantive change to the Contract.

16. On January 17, 2001, the ORP extended CH2M HILL's Contract through September 30, 2006. Subsequently, DOE extended the Contract period of performance through September 30, 2008.

**The Contract Provisions**

17. The Contract is a cost-reimbursement incentive contract and includes a fee pool.

18. The Contract allocates 100% of the available fee to performance measures, originally called "performance incentives" and now called "Performance Based Incentives" or "PBIs." This means that, unlike in a traditional cost-type contract which includes a "Base Fee" that is paid to the contractor automatically, CH2M HILL earns fee under the Contract only for performing specified fee-bearing work.

19. PBIs involve the completion of objectively measurable work that includes milestones contained in the Hanford Federal Facility Agreement and Consent Order (HFFACO), *i.e.*, milestones that DOE has agreed to with the U.S. Environmental Protection Agency and/or the State of Washington.

20. PBIs are listed in Section J, Appendix D, together with the specific incentive fee associated with each PBI.

21. The total fee pool that was available to that CH2M HILL for all PBIs was set forth in Contract § B.3, entitled "Estimated Cost and Fee." At all relevant times, that clause contained a Table B-1, entitled "Estimated Budget Authority for Fiscal Years 2001-2006." Effective with Modification A096, dated August 12, 2004, Table B-1 stated the following regarding Fiscal Years 2003-2006:

| | FY03 | FY04 | FY05 | FY06 |
|---|---|---|---|---|
| New BA Includes Fee | $410* | $386* | $387* | $388* |
| Fee | $16* | $22* | $20* | $14* |

* Amounts stated in Millions of dollars.

22. In the table above, the row labeled "New BA Includes Fee" is the amount DOE estimated would be available for all costs under the Contract during Fiscal Years 2003-2006, including fee. From whatever funding is provided by DOE, approximately $230,000,000 annually must be used by CH2M HILL for work necessary to maintain safe, environmentally sound site operations. Only the balance can be allocated to fee-bearing work and fee.

23. The total fee pool available for PBIs in Fiscal Years 2003-2006 was the sum of the figures in the row labeled "Fee", *i.e.*, $72,000,000.

24. At all relevant times, Contract § H.1 stated:

> ***It is the intent of the parties*** that the entire fee pool identified in the Section B Clause entitled *Estimated Cost and Fee* will be allocated and made available during the contract term by assigning fee to the annual or multi-year Performance Based Incentives (PBIs). [Emphasis added]

25. FAR § 15.404-4 recognizes that "[i]t is in the Government's interest to offer contractors opportunities for financial rewards sufficient to stimulate efficient contract performance, attract the best capabilities of qualified large and small business concerns to Government contracts, and maintain a viable industrial base." FAR § 16.401(a) requires that incentives in incentive-fee contracts be "reasonable and attainable."

26. Reading Contract sections B.3 and H.1 together with FAR §§ 15.404-4 and 16.401(a), it was thus a basic assumption of the parties in entering into the Contract that CH2M HILL would have a meaningful opportunity to perform PBIs and earn the associated incentive fee.

27. A corollary to that basic assumption was that DOE would use its best efforts to seek from Congress sufficient appropriations to cover the "New BA" (*i.e.*, Budget Authority) set forth in Section B.3, Table B-1 for each Fiscal Year, and would use the appropriations that it did receive to meet its contractual obligations.

28. In addition to PBIs, the Contract provides an incentive called "Acceleration Fee" (formerly known as "Superstretch"). Under the Contract, CH2M HILL could earn Acceleration Fee by performing certain work that would be funded exclusively by cost savings generated by CH2M HILL in other areas of the scope of work. The determination of the acceleration scope and the Acceleration Fee value associated with each task is based on the estimated cost associated with the Contract Performance Baseline.

29. If DOE did not provide sufficient funds to perform all of the PBIs during the Contract performance period in accordance with the contract performance baseline, there would necessarily be no opportunity for CH2M HILL to earn Acceleration Fee.

30. The Contract required CH2M HILL to create and maintain a planning and management tool called an "integrated life-cycle baseline." Contract § C.2.A(2) (renumbered C.2(a)(2) by Modification A066) stated, among other things, that: "The baseline shall be the basis for budget development, input to risk analysis, and prioritization of work."

31. Contract § C.2.A(3) required CH2M HILL to--

> Translate specific fiscal year guidance from the Contracting Officer into direction for updating project baselines. ORP must approve the baselines and the supporting documentation before the Contracting Officer authorizes the commencement of work.

This requirement was completely reworded, but substantively unchanged, via Modification A066, which stated in § C.2.(a)(2)(viii):

> Any changes to the Contractor[']s current baseline shall be documented via a Baseline Change Request. . . . By December 15 of each year, the Contractor shall provide to DOE-ORP the appropriate allocation of funds for the next fiscal year by PBS and by line item.

"PBS" is an acronym of Project Baseline Summary.

32. The Contract included or incorporated by reference the following standard FAR and DEAR clauses, among others:

- FAR § 52.216-1- -- Incentive Fee;
- FAR § 52.233-1 -- Disputes (Dec 1998), Alternate I (Dec 1991);
- FAR § 52.243-2 -- Changes - Cost Reimbursement, Alternate II;

- DEAR § 970.5215-1 -- Total Available Fee: Base Fee Amount and Performance Fee Amount;

33. FAR § 52.243-2 – Changes, states in part:

> (b) If any such change causes an increase or decrease in the estimated cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, or otherwise affects any other terms and conditions of this contract, the Contracting Officer shall make an equitable adjustment in the --
>
> (1) Estimated cost, delivery or completion schedule, or both;
> (2) Amount of any fixed fee; and
> (3) Other affected terms and shall modify the contract accordingly.

**DOE's Changes**

34. During the period from Fiscal Year 2003 through Fiscal Year 2006, DOE ordered $52,878,681 of additional work that was not contemplated by the Contract Performance Baseline. This new work was not fee bearing work.

35. DOE did not provide additional funding for this new work but rather required CH2M HILL to divert funds from fee-bearing work to perform the new work. This was in addition to the approximately $230 million of non-fee-bearing work that CH2M HILL was expected to perform under the Contract each year.

36. In addition, DOE did not ask Congress for funding for Fiscal Year 2006 at the "New BA" levels set forth in Contract § B.3, Table B-1, *i.e.*, $388 million.

37. Ultimately, DOE only gave CH2M HILL $320 million in funding for Fiscal Year 2006. This fell short of DOE's contractual commitment for Fiscal Year 2006 by $68,816,394.

38. In contrast, DOE requested and received 100% of the amount required by Table B-1 in Fiscal Years 2003-2005.

39. The combined effect of the DOE's actions and inactions described above was a shortfall in funding for fee-bearing work in Fiscal Years 2003-2006 totaling $121,695,075 (*i.e.*, $68,816,394 in reduced funding plus $52,878,681 in work that was not contemplated by the Contract Performance Baseline).

40. Alternatively, DOE did receive appropriations for Fiscal Years 2003-2006 from which DOE could have fully funded all amounts on Table B-1 of Contract § B.3, but DOE chose to allocate to CH2M HILL'S Contract $68,816,394 less than what was set forth in Table B-1 and also to add additional unfunded work, resulting in a shortfall of $121,695,075.

41. As noted above, CH2M HILL can earn fee under the Contract only by completing work and/or by meeting milestones that have been made the subject of PBIs and/or by generating cost savings that fund Acceleration Fee work. As a result of DOE's actions and inactions, including the failure to seek agreed upon funding and the addition of new work, CH2M HILL was not provided sufficient funds to perform the work. That, in turn, prevented CH2M HILL from meeting some PBI milestones and also prevented it from generating cost savings to fund Acceleration Fee work.

42. DOE also failed to cooperate in CH2M HILL's Baseline Change Requests that would have mitigated some of the effects of the funding shortfalls and added requirements. Had DOE agreed to such requests, CH2M HILL could have used funds to meet fee bearing milestones.

43. DOE did not grant CH2M HILL an equitable adjustment to compensate it for the loss of fee as a result of DOE's actions and inactions. DOE did not equitably adjust the Contract to provide additional funding and time for CH2M HILL to meet the fee bearing milestones.

44. As stated above, on October 12, 2006, CH2M HILL filed a properly certified claim under the Contract Disputes Act, 41 U.S.C. §§ 601-613, for recovery of the lost fee arising from these ordered and constructive changes and, in the alternative, for reformation of the contract.

45. On February 28, 2007, DOE issued a final decision denying CH2M HILL's claim in its entirety.

46. Also on October 12, 2006, CH2M HILL submitted a separate claim to the DOE arising from changes to the Contract relating to the use of supplied air. That claim was the subject of a separate contracting officer's final decision and is the subject of a separate dispute pending before the Civilian Board of Contract Appeals ("CBCA") and docketed as CBCA No. 708. The subject matter of that dispute is different from the subject matter of this case. The relief requested in CBCA No. 708 does not overlap with the relief requested here.

## COUNT I
## (Equitable Adjustment for Ordered and Constructive Changes)

47. CH2M HILL incorporates by reference paragraphs 1 through 46 above as if stated fully herein.

48. DOE added non-fee-bearing work to the Contract but did not provide additional funds which required CH2M HILL to divert funds away from PBIs and other fee-bearing work.

49. DOE also reduced the level of funding available to perform PBIs and other fee-bearing work.

50. The Changes clause states that, in such a situation "the Contracting Officer shall make an equitable adjustment in the (1) estimated cost, delivery or completion schedule, or both; (2) amount of any fixed fee; and (3) other affected terms and shall modify the contract accordingly."

51. As a result of the above ordered and constructive changes, CH2M HILL has been deprived of the ability to earn fee totaling $10,515,000.

52. The amount of fee associated with each PBI is pre-determined and certain. But for the Government's changes, CH2M HILL would have performed the PBIs, which instead went unperformed either in whole or in part, and CH2M HILL would have earned the fee associated with those PBIs, totaling the amount specified in the previous paragraph.

**COUNT II**
**(Equitable Adjustment for Breach of the Government's Duty to Cooperate)**

53. CH2M HILL incorporates by reference paragraphs 1 through 46 above as if stated fully herein.

54. Every contract includes an implied duty on the part of the Government to cooperate with the contractor and not to hinder its performance.

55. In particular, DOE had a duty to cooperate with and not hinder the accomplishment of a basic assumption of the Contract, *i.e.*, that CH2M HILL would have a meaningful opportunity to perform PBIs and earn the associated incentive fee.

56. Accordingly, DOE had a duty to base its request for appropriations on the level of funding that was set forth in Table B-1 in Contract § B.3.

57. Alternatively, from the total appropriations received from Congress, DOE had a duty to allocate to CH2M HILL's Contract the level of funding that was set forth in Table B-1 in Contract § B.3.

58. By failing to base its request for funding at the levels set forth in Table B-1 and/or by failing to allocate to the Contract the levels of funding set forth in Table B-1, the Government breached its duties to CH2M HILL.

59. As a result of DOE's breach of its duty to cooperate and not to hinder, CH2M HILL has been deprived of the ability to earn fee totaling $10,515,000.

60. The amount of fee associated with each PBI is pre-determined and certain. But for the Government's changes, CH2M HILL would have performed the PBIs, which instead went unperformed either in whole or in part, and CH2M HILL would have earned the fee associated with those PBIs, totaling the amount specified in the previous paragraph.

**COUNT III**
**(Equitable Adjustment for Breach of the Government's Duty to Cooperate)**

61. CH2M HILL incorporates by reference paragraphs 1 through 46 above as if stated fully herein.

62. Every contract includes an implied duty on the part of the Government to cooperate with the contractor.

63. In particular, DOE had a duty to cooperate with and not hinder the accomplishment of a basic assumption of the Contract, *i.e.*, that CH2M HILL would have a meaningful opportunity to perform PBIs and earn the associated incentive fee.

64. By failing to consider and implement CH2M HILL's BCR to mitigate the cost and schedule effects of the reduced funding and added requirements, DOE breached that duty.

65. As a result of DOE's breach of its duty to cooperate, CH2M HILL has been deprived of the ability to earn fee totaling $10,515,000.

66. The amount of fee associated with each PBI is pre-determined and certain. But for DOE's changes, CH2M HILL would have performed the PBIs, which instead went unperformed either in whole or in part, and CH2M HILL would have earned the fee associated with those PBIs, totaling the amount specified in the previous paragraph.

**COUNT IV**
**(Reformation)**

67. CH2M HILL incorporates by reference paragraphs 1 through 46 above as if stated fully herein.

68. Alternatively, CH2M HILL is entitled to reformation of the Contract because of the mutual mistake of fact made by the parties in entering into this Contract.

69. DOE and CH2M HILL were mutually mistaken in their belief as to whether the levels of funding set forth in Table B-1 would be made available by Congress in order to support the level of fee set forth in that table.

70. The mistaken belief that the contracting parties held about the above fact constituted a basic assumption underlying the Contract. Specifically, the parties agreed to a fee structure and a cost and schedule that the parties would have viewed as impossible to accomplish had they known that Congress would not provide the required

levels of funding and/or that DOE would not allocate the required funding to the Contract.

71. The mistake had a material effect on the bargain. But for the mistaken belief of fact, CH2M HILL and DOE never would have entered into a contract under which it was virtually impossible for CH2M HILL to perform PBIs and earn fee. The parties' mistaken belief was the reason that the Contract's fee structure and the specific PBIs included in the Contract were adopted.

72. Finally, the Contract did not put the risk of the mistake on the party seeking reformation, *i.e.*, CH2M HILL. To the contrary, the Contract allows for an equitable adjustment in fee in the event of inadequate funding.

WHEREFORE, CH2M HILL requests judgment on its Complaint, as follows:

A. Granting CH2M HILL an equitable adjustment in the amount of $10,515,000 or such other amount as is proven at a trial in this matter;

B. Alternatively, reforming the Contract to add a base fee of $10,515,000 or otherwise to compensate CH2M HILL for its lost fee;

C. Alternatively, reforming the Contract to add sufficient funding and revise the schedule to allow CH2M HILL to perform the work associated with the lost fee and to earn the lost fee;

C. Awarding CH2M HILL interest pursuant to the Contract Disputes Act; and

D. Awarding CH2M HILL all other relief as is just and equitable.

Dated: July 2, 2007

Respectfully submitted,

CH2M HILL Hanford Group, Inc.

By: ______________________

Kenneth B. Weckstein
Epstein Becker & Green, P.C.
1227 25th Street, N.W., Suite 700
Washington, DC 20037
Telephone: (202) 861-1860
Facsimile: (202) 296-2882
kweckstein@ebglaw.com

Counsel of Record for Plaintiff

Of Counsel:

Shlomo D. Katz
Epstein Becker & Green, P.C.
1227 25th Street, N.W., Suite 700
Washington, DC 20037
Telephone: (202) 861-1860
Facsimile: (202) 296-2882
skatz@ebglaw.com

Stanley J. Bensussen
Chief Counsel
CH2M HILL Hanford Group, Inc.
P.O. Box 1500, MSIN H6-18
Richland, WA 99352
Telephone: 509-372-3800
Facsimile: 509-372-1397