IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CH2M HILL HANFORD GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-494C |
| THE UNITED STATES, | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S MOTION TO CONSOLIDATE
IN THIS COURT, A COMPANION CASE, CURRENTLY
PENDING BEFORE THE CIVILIAN BOARD OF CONTRACT APPEALS

Pursuant to 41 U.S.C. § 609(d), defendant, the United States, hereby respectfully moves this Court to consolidate with this case a companion case, filed by the plaintiff, CH2M Hill Hanford Group, Inc. ("CH2M"), which is currently pending before the Civilian Board of Contract Appeals ("CBCA" or "board"): CH2M HILL Hanford Group, Inc., v United States Department of Energy, No. 708 (CBCA). A copy of the complaint filed with the board ("board complaint") has been placed in the appendix to this motion. A1-23.[1]

SUMMARY OF THE ARGUMENT

Both complaints seek the same relief: increased awards of fee for the period Fiscal Year ("FY") 2003 through FY 2006. Both complaints rely upon the same contractual provisions. Both complaints allege that the Government is liable because insufficient funding was available for activities that would satisfy the fee provisions. Any assessment of liability and damages in either forum will require an inquiry into the same

---

[1] "A" refers to the appendix to this motion.

factual matters. Thus, it is in the interests of justice and judicial economy to consider the allegations in these two complaints together.

In both cases, CH2M seeks to have the relevant tribunal speculate concerning what tasks CH2M "would have" completed (and so, what fee CH2M "would have" been awarded), if CH2M had had more money to spend. Obviously, money is fungible, and any "more money" that may be deemed to have been appropriately allocated to the CH2M contract (whether deemed by the board or deemed by this Court) could support the exact same activities, and the same possibilities for fee awards.

Assuming for the sake of argument that CH2M has stated claims upon which relief may be granted, each tribunal would be required to examine the same facts: what progress CH2M did -- or did not -- make during contract performance. Each tribunal would be required to assess (based upon CH2M's past record) whether CH2M's progress was limited by funding alone, or by other factors, such as CH2M's own ineffective management.

The overlapping liability issues are highlighted by obvious overlaps in the damages sought. For example, in both cases, CH2M seeks incentive fee for cleaning tanks. In this case, CH2M has named the specific tanks that it "would have" cleaned; in the board case, CH2M has not specified what tanks it "would have" cleaned. However, this distinction does not mean that the damages sought are different. In both cases, CH2M alleges that

with a certain amount of additional dollars, a certain number of additional tanks might have been cleaned. Dollars are fungible, and can be applied equally to CH2M's hypothetical performance scenarios.

Similarly, in both cases, CH2M seeks unspecified "acceleration fee" for generic tasks that would allegedly have been completed if more funding had been allotted to CH2M's contract. There is no meaningful distinction between these acceleration fee claims.

It is in the interests of judicial economy to consolidate these cases. Otherwise, the same issues will be explored in separate discovery proceedings, and decided in separate trials -- thus wasting the resources of the parties and the tribunals.

It is in the interests of justice to consolidate these cases to avoid the risks of inconsistent findings and duplicative damage awards.

## STATEMENT OF FACTS

It is our understanding that the following facts are undisputed.

### I. The Fee Provisions In The Contract

The CH2M contract is a multi-year, cost-reimbursement contract to manage a "tank farm" (177 underground tanks filled with toxic waste) at the Department of Energy ("DOE") facility near Richland, Washington (the "Hanford" facility). The contract requires CH2M to manage all aspects of the tank farm. In

general, CH2M must retrieve toxic waste from the tanks, immobilize the waste, and close the tanks.

The principal fee provisions in the contract reward CH2M if CH2M accomplishes certain specific goals. For convenience, the goals are organized and described as "performance based incentives" (PBIs). Each PBI is broken down into component "milestones." The contracting officer evaluates CH2M's performance, determines whether a milestone has been achieved, and may award fee up to the maximum amount designated in advance for each such milestone. See A25-36 (summary of milestones, maximum fee amounts, and fee awarded for FY 2003 through FY 2006).

The following summary outlines the fee awarded for FY 2003 through FY 2006:

| | Possible | Awarded | Unearned |
|---|---|---|---|
| PBI 1 | 3,000,000 | 3,000,000 | 0 |
| PBI 2 | 29,000,000 | 22,768,000 | 6,232,000 |
| **PBI 3** | **25,200,000** | **12,925,000** | **12,275,000** |
| **PBI 4** | **12,300,000** | **5,928,625** | **6,071,375** |
| PBI 5 | 1,300,000 | 1,300,000 | 0 |
| PBI 6 | 1,200,000 | 900,000 | 300,000 |

A24; see A25-36.

Both complaints seek many millions of dollars for fee unearned for PBI 3. In general, PBI 3 milestones involved the retrieval of waste from various tanks. A27-34.

The complaint filed in this case also seeks several million dollars for fee unearned for PBI 4.2.b and PBI 4.2.c. A37. The PBI 4.2.b and PBI 4.2.c milestones relate to a special project distinct from the PBI 3 tank cleaning milestones.

Acceleration fee is not tied to specific goals. Instead, it rewards efficiencies achieved in any aspect of contract work. See Complaint, ¶ 28; A18 (board complaint).

II. Both Complaints Seek PBI 3 Fee For Uncleaned Tanks

Both complaints challenge the general administration of the contract. Both complaints assume that CH2M possessed a contract right to demand that tasks recorded in CH2M's planning software (the "contract performance baseline") would be given the highest priority by the contracting officer during contract performance. Accordingly, both complaints allege that contract funding was "diverted" from the allegedly contractually mandated tasks in the contract performance baseline:

> During the period from Fiscal Year 2003 through Fiscal Year 2006, DOE ordered $52,878,681 of additional work that was not contemplated by the Contract Performance Baseline.

Complaint, ¶ 34 (emphasis added);

> Here, as a result of DOE's ordered and constructive changes, CH2M Hill was required to divert funding from fee-bearing work to non-fee-bearing work, thus losing the ability to earn fee under the Contract. Specifically, DOE required CH2M Hill to resolve so-called "legacy vapor issues," work that was not part of the Contract Performance Baseline.

A1 (board complaint)(emphasis added).

Both complaints allege that such "diversion" of funding from CH2M's priorities caused inadequate funding of activities that might result in the award of incentive fee to CH2M:

> CH2M Hill was required to divert funding from fee-bearing work to non-fee-bearing work, thus losing the ability to earn fee under the Contract.

Complaint, ¶ 1;

> Here, as a result of DOE's ordered and constructive changes, CH2M Hill was required to divert funding from fee-bearing work to non-fee-bearing work, thus losing the ability to earn fee under the Contract.

A1 (board complaint).

Both complaints allege (among other things) inadequate funding for PBI 3 activities. Both complaints seek approximately $3 million in fee for tanks that CH2M "would have" cleaned if more funding had been available.

In this case, CH2M seeks maximum fee amounts for hypothetically cleaning four tanks -- tanks 12, 13, 14 and 15 (all PBI 3 milestones):

> As a result of the above ordered and constructive changes, CH2M Hill has been deprived of the ability to earn fee totaling $10,515,000.

Complaint, ¶ 51; A37 (summary of PBI "missed" milestones comprising the $10,515,000 sought) ($3,300,000 sought for tanks 12, 13, 14 and 15). In the board complaint, CH2M seeks maximum fee amounts for hypothetically cleaning 3.8 tanks -- but CH2M

does not identify the specific tanks. A19 ($7 million in damages); A39 (excerpt from certified claim setting forth damage calculation method) (approximately $3 million for cleaning tanks).[2]

III. Both Complaints Seek Acceleration Fee For Unspecified Work That Would Have Been Completed

In this case, CH2M seeks unspecified amounts as damages for missed acceleration fee. Complaint, ¶ 29 ("no opportunity for CH2M to earn Acceleration Fee"). In the board case, CH2M also seeks unspecified amounts as damages for missed acceleration fee. A18 ("CH2M was prevented from meeting some PBI milestones and also prevented from generating cost savings to fund Acceleration Fee work") (emphasis added).

ARGUMENT

I. Consolidation Is Favored By Congress

Congress specifically provided for the consolidation of cases involving the same contract:

> If two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

41 U.S.C. § 609(d) (emphasis added). Congress enacted this

[2] The cited excerpt from the certified claim includes dollar values subsequently revised. See A43 (agency interpretation of revised claim totals).

provision to discourage the splitting of related claims into separate proceedings:

> It is the intent of the committees that splitting of the causes of action, or suits, under one contract be kept to a minimum.

S.Rep. No. 1118, 95th Cong. 31, reprinted in 1978 U.S. Code Cong. & Ad. News 5235, 5265 (emphasis added); accord Joseph Morton Co., Inc. v. United States, 757 F.2d 1273, 1280 (Fed. Cir., 1985).

When deciding whether to consolidate two cases, this Court considers both the threat of inconsistent rulings and the interests of judicial economy. E.g., Northrop Grumman Corp. v. United States, 70 Fed. Cl. 230, 232 (2006) (six factors identified). Applying such analysis to this case strongly supports consolidation.

II. The Two Complaints Contain Overlapping Issues

The basic premise of both complaints is identical: CH2M claims that if the United States had provided more funding, then CH2M would have earned more incentive fee and more acceleration fee. Both complaints allege that the United States breached the contract by depriving CH2M of funding that CH2M had a contractual right to receive.

Although sharing a fundamental premise, the complaints are not identical in all respects. In this case, CH2M alleges that the United States deprived CH2M of a contractual right to funding in two ways:

1. by diverting $53 million to allegedly "out of scope" activities (Complaint, ¶ 34), and

2. by failing to request $69 million more from Congress (Complaint, ¶ 37).

The board complaint also alleges that the United States deprived CH2M of a contractual right to funding by diverting funding to allegedly "out of scope" activities. A39 (portion of certified claim) (alleging diversion of approximately $100 million to "out of scope" activities). The principal distinction between the two complaints is that the board complaint does not allege insufficient appropriation requests.

It is not necessary that two complaints be identical in order for it to be appropriate to consolidate the cases. Indeed, Congress declared its preference for consolidation if the claims merely arise from the same contract:

> It is the intent of the committees that splitting of the causes of action, or suits, under one contract be kept to a minimum.

S.Rep. No. 1118, 95th Cong. 31, reprinted in 1978 U.S. Code Cong. & Ad. News 5235, 5265 (emphasis added); accord Joseph Morton Co., 757 F.2d at 1280.

Here, the two cases share much more than a common contract. The two cases pose several common issues, including the following:

(1) whether CH2M had any contract right to have the United States make work included in the Contract Performance Baseline software a priority over other contract work;

(2) whether the United States breached the contract by requiring worker-protection precautions or by otherwise directing the manner for performing the work, where the

United States reimbursed CH2M for all costs incurred;

(3) whether the sole reason that CH2M failed to achieve incentive fee milestones within the relevant time was a lack of funding allocated to contract activities;

(4) whether CH2M has stated a claim for acceleration fee.

Substantial discovery and motion practice related to these common issues is likely; trial is possible. We respectfully suggest that it would be wasteful to address these matters simultaneously in two forums.

In summary, consolidation is supported by the interests of judicial economy because only one discovery proceeding, one briefing schedule, and one trial need be conducted. Consolidation is also supported by the interests of justice because the possibility of inconsistent findings and duplicative damage awards will be averted.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consolidate plaintiff's Case No. 708, filed with the CBCA, with the instant case in this Court.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

October 5, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 5, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO CONSOLIDATE IN THIS COURT, A COMPANION CASE, CURRENTLY PENDING BEFORE THE CIVILIAN BOARD OF CONTRACT APPEALS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier