**BEFORE THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

| | |
|---|---|
| **CH2M HILL Hanford Group, Inc.**<br>*Plaintiff,*<br>*v.*<br>**The United States,**<br>*Defendant.* | **No. 07-494C**<br>**(Chief Judge Damich)** |

**DECLARATION OF DANIEL B. CARTMELL**

I, Daniel B. Cartmell, hereby declare that I am competent to testify to the matters stated herein, as follows:

1. I am Vice President and Chief Financial Officer of CH2M HILL Hanford Group, Inc. (CH2M HILL). In that capacity, I participated in the preparation of CH2M HILL's Certified Claim which is the basis for this lawsuit. That claim was entitled: "Constructive Change Due to Reduced Funding and the U.S. Department of Energy's Failure to Seek Appropriate Funding from Congress" (the Funding Claim). In my official capacity, I certified the Funding Claim under the Contract Disputes Act.

2. I also participated in the preparation of CH2M HILL's Certified Claim which is the basis for CH2M HILL's appeal that is pending before the Civilian Board of Contract Appeals (CBCA) and is docketed as CBCA No. 708. That claim was entitled: "Legacy Tank Farm Vapor Issues" (the Vapors Claim). In my official capacity, I certified the Vapors Claim under the Contract Disputes Act.

3. I have reviewed the Motion to Consolidate filed by the Government. The purpose of this declaration is to point out factual errors in the Government's motion and, in particular, to show that the Funding Claim and Vapors Claim do not overlap, as the Government claims.

I understand that this declaration will be filed in the Court of Federal Claims by CH2M HILL's counsel in the case referred to in the caption above.

4. As discussed below, the Vapors Claim and the Funding Claim are unrelated. They do arise under the same contract, but for much different reasons and under different contract clauses. They arose from events occurring in different fiscal years. They seek different damages. As also explained below, the fact that the two claims are in litigation at the same time is the result of events whose timing was in the control of the Department of Energy (DOE).

**The Contract**

5. DOE's contract with CH2M HILL is of the type known as a "cost plus incentive fee" (CPIF) contract. Under a CPIF Contract, the contractor, in this case CH2M HILL, is reimbursed for its costs of performing the Contract work. Some of that work is "fee-bearing" and other work is "non-fee-bearing." If the work is non-fee-bearing, it means that the contractor performs the work at cost and is not paid an incentive fee or other profit factor for performing that work. If work is fee-bearing, it means that the contractor is permitted to earn profit for performing that work.

6. Non-fee-bearing work generally consists of maintaining the tank farms in a safe and compliant condition, including other project support costs. This includes providing utilities, security, environmental controls, and other general and administrative costs. Fee-bearing work is generally work that leads to clean-up of DOE's Hanford site.

7. The Contract contemplated that DOE would make $1.571 billion available for CH2M HILL to perform the Contract work. Under the agreed Contract Baseline Workscope for Fiscal Years (FYs) 2003 through 2006, DOE was to provide CH2M HILL with $503 million to perform fee-bearing work and another $996 million to perform non-fee-bearing work. The remaining $72 million was earmarked by the Contract for fee payments to CH2M HILL. Under

the Contract, if CH2M HILL had been able to perform all of the fee-bearing work in FYs 2003-2006, it could have earned total fee for those years of $72 million.

8. When there are not enough funds to perform both the fee-bearing and the non-fee-bearing work, it is necessary to give the non-fee-bearing work precedence because that work maintains the site in a safe state.

9. Through multiple, separate actions and inactions over four fiscal years, DOE effectively decreased the amount of money available for fee-bearing work under the Contract from the original agreed-upon total of $503 million to approximately $282 million. Of the $221 million shortfall (*i.e.*, $503M - $282M), $99 million are attributable to the DOE changes that are described in the Vapors Claim, while $122 million are attributable to a different set of DOE changes that are described in the Funding Claim.

**The Vapors Claim**

10. The Vapors Claim arises from a specific ordered change contained in a letter that the DOE Contracting Officer sent to CH2M HILL on March 26, 2004. The letter was titled "Direction of Tank Farm Work" and directed CH2M HILL to take six specific actions that changed the Contract.

11. The cost of performing the work directed in the DOE Contracting Officer's March 26, 2004 letter was $99 million. DOE refused to assign fee to this Government-directed work scope. However, CH2M HILL was not relieved of performing other non-fee-bearing work in order to perform the extra work directed by the Contracting Officer. Thus, the expenditure of $99 million to perform the added non-fee-bearing work reduced the $503 million that originally was available for fee-bearing work to $404 million.

12. On July 27, 2005, following more than a year of correspondence and discussions with DOE regarding the Vapors issue, CH2M HILL sent DOE a letter entitled: "Notification of

Change to Contract Scope Under Clause I.65 Changes – Cost Reimbursement." The July 27th letter explained that the work resulting from DOE's direction had—

> significantly impacted CH2M HILL's ability to complete work contained in the PBIs[[1]] (including specifically tank retrieval and waste feed delivery projects) and thereby have and will significantly impact CH2M HILL's ability to meet Hanford Federal Facility Agreement and Consent Order (HFFACO) milestones and our ability to earn fee. Finally, these new and different requirements when applied to preexisting conditions have added significant new scope to our contract for which the U.S. Department of Energy (DOE) has not provided additional new funding, thereby substantially impacting any meaningful opportunity for us to earn acceleration fee.

13. On September 26, 2005, CH2M HILL submitted a request for equitable adjustment (REA) (the Vapors REA) based on the impacts mentioned in the July 27th letter.

14. On October 11, 2005, DOE returned the Vapors REA to CH2M HILL without action.

15. On November 10, 2005, CH2M HILL resubmitted the Vapors REA with additional information.

16. On July 17, 2006, DOE gave CH2M HILL a "technical evaluation" of the Vapors REA, which, in effect, denied the REA.

17. On October 12, 2006, CH2M HILL filed its certified Vapors Claim seeking $7.1 million for the fee that CH2M HILL lost the ability to earn as a result of DOE's direction to perform the additional $99 million of work scope.

18. The primary statement of work clauses in the Contract relevant to the Vapors Claim are Sections C.1, C.2 and C.3.

19. The ultimate issue in the Vapors Claim appeal is whether the Contract as it existed on March 26, 2004 required CH2M HILL to take certain actions relating to so-called

---

[1] *I.e.*, "Performance Based Incentives."

"Legacy Vapor Issues" or whether DOE's direction to CH2M HILL to take those actions was a change. Many of the witnesses in the Vapors Appeal case are likely to be in the Richland, Washington area. I am informed by counsel that, for that very reason, the CBCA has scheduled the trial in the Vapors Claim appeal to be held in Richland. Also, a deposition in the Vapors Appeal is scheduled to be taken on October 29, 2007.

**The Funding Claim**

20. The Funding claim is a separate and distinct claim. In contrast to the Vapors Claim, which arises from Contracting Officer direction in March 2004, the Funding Claim arises from DOE's failure to request the appropriate level of funding from Congress for Fiscal Year 2006, which began on October 1, 2005. DOE was contractually obligated to request a certain level of funding in order to provide CH2M HILL with the agreed upon funding for the fee-bearing and non-fee-bearing work contained in the Contract.

21. As a result of DOE's failure to request sufficient funds from Congress, the Contract funding that DOE provided to CH2M HILL to fund the remaining scope of work in FY2006 was $69 million less than required by Contract Section B.3 and the approved Baseline. As explained above, any shortfall must be taken from fee-bearing work, not from non-fee-bearing work.

22. Also, for the period FY2003 through FY2006, DOE added $53 million in additional work to the Contract. DOE refused to assign fee earning opportunities for the completion of that additional work. Thus, the $53 million also had to be deducted from the amount available for fee-bearing work and resulted in a total decrease in the amount of funding available for fee-bearing work by another $122 million (*i.e.*, $69M + $53M). This was separate from the $99 million reduction covered by the Vapors Claim.

23. The Funding Claim was first presented to DOE on November 23, 2005 in the form of a request for equitable adjustment (REA) entitled "Performance Based Incentives due to Lack of Funding" (the Funding REA).

24. DOE never formally responded to the Funding REA.

25. On October 12, 2006, CH2M HILL filed its certified Funding Claim seeking $10.5 million for the fee that CH2M HILL lost the ability to earn as a result of DOE's reducing the available funding by the above-discussed $122 million.

26. The primary Contract clause relevant to the Funding Claim is Sections B.3.

27. The ultimate issues in this lawsuit (the Funding Claim) are: (1) whether the Contract required DOE to make good faith efforts to obtain a certain funding level from Congress; (2) whether DOE made the required efforts; and (3) whether DOE's failure to provide enough funding and DOE's ordering of $53 million of additional work deprived CH2M HILL of the ability to earn the base incentive fee provided for in the contract.

28. CH2M HILL understands that the decision about how much money to request from Congress is made by DOE Headquarters. Thus, many of the witnesses in the Funding Claim case are likely to be found in Washington, D.C., including DOE budget officials.

29. In preparing the Funding Claim, CH2M HILL excluded any impacts that were already covered by the Vapors Claim. Footnote 3 on page 2 of Funding Claim Enclosure 1 specifically advised DOE of this fact.

30. The Government's Motion to Consolidate argues that the Vapors Claim and the Funding Claim overlap because they both seek "PBI 3 Fee for Uncleaned Tanks." The area in which the Government claims there is an overlap relates to Performance Based Incentive (PBI) 3.3.c. PBI 3.3.c covered waste retrieval from 15 uncleaned Single Shell Tanks. The Vapors

Claim includes fee associated with four of the fifteen tanks. The Funding Claim includes fee associated with four separate (additional) tanks out of the fifteen. Had DOE made funding available CH2M HILL would have been able to retrieve the waste from all eight tanks. Those eight tanks (four associated with Vapors and four associated with Funding) are not the same and do not overlap. Therefore, the Government's argument that the claims overlap because each covers tanks within the same PBI is wrong.

**The Timing of the Vapors and Funding Claims**

31. The Funding Claim and the Vapors Claim were certified and submitted to DOE on October 12, 2006.

32. As noted above, both claims originally were presented to DOE as REAs. By letter dated March 23, 2006, DOE informed CH2M HILL that DOE intended to resolve "all open or anticipated equitable adjustments" as part of a contract extension that was then going to be negotiated between CH2M HILL and DOE.

33. The contract extension negotiations were completed with the issuance of Contract Modification M120 on September 26, 2006. That modification did not resolve either REA, and the DOE Contracting Officer confirmed in a letter dated the same day that the REAs had not been resolved. The letter encouraged CH2M HILL to "follow procedures provided within the bounds of existing contract language," which CH2M HILL understood to mean that its only remaining recourse was to file certified claims.

34. Finally, the issuance of the contract extension in September 2006 forced CH2M HILL to change the form of relief that it was requesting from reallocation of fee among achievable work scope activities, which had been requested in the REAs, to cash payment of fee, which was requested in the certified claims.

35. The above factors are what led to the Vapors Claim and Funding Claim being certified and submitted on October 12, 2006.

36. Because the two claims were submitted on the same day, CH2M HILL expected final decisions to be issued on the same day.

37. The Contracting Officer denied the Vapors Claim in a final decision issued on February 7, 2007.

38. DOE's transmittal letter for the Vapors Claim final decision stated that additional time was needed to review the Funding Claim due to its complexity. CH2M HILL understood from this that DOE recognized the separateness of the two claims.

39. The Contracting Officer denied the Funding Claim in a final decision issued on February 28, 2007.

40. At no time during its consideration of CH2M HILL's claims did the Government say that the two claims contained duplicative damages. DOE's final decisions on the Vapors Claim and the Funding Claim do not argue that the two claims overlap. DOE apparently understood and agreed with CH2M HILL's assurance that the claims do not contain duplicative damages.

**Inaccuracies in the Government's Motion to Consolidate**

41. On page 3 of its motion, the Government says that: "The contract requires CH2M [HILL] to manage all aspects of the tank farm." This is an overly broad generalization of the Contract's scope of work.

42. On page 5, Defendant says that: "Both complaints challenge the general administration of the contract." That is not an accurate characterization of either dispute. As explained above, the Vapors Claim arises from a letter that the DOE Contracting Officer sent to CH2M HILL on March 26, 2004. The letter was entitled "Direction of Tank Farm Work" and

directed CH2M HILL to take six specific actions which changed the Contract. However, CH2M HILL is not challenging DOE's right to issue changes under the Contract's Changes clause.

43. The Funding Claim also does not "challenge the general administration of the contract." Rather, the Funding Claim seeks compensation for the changes, constructive changes or breach of contract that occurred when DOE failed to honor its obligations under specific contract clauses, especially Section B.3.

44. The Government further argues on page 5 that: "Both complaints assume that CH2M [HILL] possessed a contract right to demand that tasks recorded in [CH2M HILL's] planning software (the "contract performance baseline") would be given the highest priority by the contracting officer during contract performance." This is wrong in several respects.

45. First, the "contract performance baseline" is not "[CH2M HILL's] planning software." Rather, the baseline is a requirement of Contract Section H.1 and is a DOE-approved document. Changes to the baseline must be submitted to DOE for review and approval through documents called "Baseline Change Requests" or "BCRs."

46. Second, CH2M HILL's claims do not assume that CH2M HILL possessed a contract right to demand that tasks recorded in the baseline be given the highest priority by the contracting officer during contract performance. CH2M HILL recognizes the contracting officer's right to make changes to the scope of work pursuant to the Changes clause. At the same time, that clause entitles CH2M HILL, as the contractor, to compensation when such changes are made.

47. On page 6, the Defendant argues that: "Both complaints allege that such 'diversion' of funding from [CH2M HILL's] priorities caused inadequate funding of activities that might result in the award of incentive fee to CH2M [HILL]." CH2M HILL disputes calling

the DOE-required and approved baseline as "[CH2M HILL's] priorities." The baseline was prepared by CH2M HILL and approved by DOE on the basis of DOE's priorities, directions, and requirements.

I, Daniel B. Cartmell, declare under penalty of perjury that the foregoing is true and correct.

Executed on October 18, 2007.

Daniel B. Cartmell