IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CH2M HILL HANFORD GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-494C |
| | ) | |
| THE UNITED STATES, | ) | (Chief Judge Damich) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE IN THIS COURT, A COMPANION CASE, CURRENTLY PENDING BEFORE THE CIVILIAN BOARD OF CONTRACT APPEALS

In its response, the plaintiff, CH2M Hill Hanford Group, Inc. ("CH2M"), discusses many unnecessary details in an effort to obscure one obvious and legally-significant fact: its two cases share the same basic premise. Thus, consolidation is appropriate and necessary to avoid inconsistent findings, double recovery, and wasteful duplication of effort.

Ironically, in its zeal to provide excessive detail, CH2M has inadvertently confirmed the central point made by our motion to consolidate: both of its cases share the same basic premise. Specifically, relevant portions of the declaration provided by Mr. Cartmell confirm the analysis of CH2M's claims that was set forth in our motion to consolidate.

In summary, the "vapors claim," which is currently pending before the Civilian Board of Contract Appeals ("CBCA" or "board"), alleges that CH2M had a right to expect a certain level of funding for certain activities, and that the agency diverted $99 million from such activities by requiring worker protection measures which were "outside the scope" of activities listed in

its planning software (the "contract performance baseline") at the time of contract award. The "funding claim" filed in this Court is an amalgam of two segments. One segment has a premise identical to the vapors claim: CH2M alleges that it had a right to expect a certain level of funding for certain activities, and that the agency diverted $53 million from such activities by requiring work outside the scope of activities listed in its planning software at the time of contract award. Complaint, ¶ 34. The other segment of the funding claim has a similar premise: CH2M alleges that it had a right to expect a certain level of funding for certain activities, and that the agency failed to seek sufficient appropriations from Congress to pay CH2M for those activities. Complaint, ¶ 37 (shortfall of $69 million).

The two cases present common issues of liability, causation and damages. They should be consolidated before this Court.

## I. In Its Response, CH2M Now Admits That Both Cases Are Based Upon The Same Premise

CH2M has admitted that both claims are premised upon CH2M's allegation that the contract required the United States to pay CH2M $1.499 billion for costs incurred by CH2M:

> The Contract contemplated that DOE would make $1.571 billion available for CH2M HILL to perform the Contract work. Under the agreed Contract Baseline Workscope for Fiscal Years (FYs) 2003 through 2006, DOE was to provide CH2M HILL with $503 million to perform fee-bearing work and another $996 million to perform non-fee-bearing work. The remaining $72 million was earmarked by the Contract for

> fee payments to CH2M HILL.
>
> . . . Through multiple, separate actions and inactions over four fiscal years, DOE effectively decreased the amount of money available for fee-bearing work under the Contract from the original agreed-upon total of $503 million to approximately $282 million. Of the $221 million shortfall (i.e., $503M - $282M), $99 million are attributable to the DOE changes that are described in the Vapors Claim, while $122 million are attributable to the DOE changes that are attributable to a different set of DOE changes that are described in the Funding Claim.

Decl, at 2-3 (emphasis added).[1] In this case and the board case, CH2M merely alleges a different portion of the alleged "221 million shortfall."

Furthermore, in both cases, the alleged "shortfall" is calculated by reference to the planning software, which CH2M contends is the contract's scope of work, the contract's definition of "fee-bearing work," and the contract's detailed agreement concerning how the $1.499 billion in costs would be spent:

> Under the agreed Contract Baseline Workscope for Fiscal Years (FYs) 2003 through 2006, DOE was to provide CH2M HILL with $503 million to perform fee-bearing work and another $996 million to perform non-fee-bearing work.

Decl, at 2 (emphasis added);

---

[1] "Decl" refers to the "Declaration of Daniel B. Cartmell," filed on October 22, 2007, together with CH2M's response to our motion for consolidation.

> First, the <u>"contract performance baseline"</u> is not "[CH2M HILL's] planning software. Rather, the baseline is a requirement of Contract Section H.1 and is a DOE-approved document. Changes to the baseline must be submitted to DOE for review and approval through documents called "Baseline Change Requests" or "BCRs."
>
> . . . CH2M HILL is not challenging DOE's right to issue changes under the Contract's changes clause.
>
> . . . <u>CH2M HILL recognizes the contracting officer's right to make changes to the scope of work [alleged by CH2M to be set forth in the contract performance baseline]</u> pursuant to the Changes clause. At the same time, the clause entitles CH2M HILL, as the contractor, to compensation when such changes are made.

Decl, at 9 (emphasis and second brackets added). Thus, CH2M contends that the direction to provide the safety protections identified in the vapors claim breached the contract because $99 million was diverted from activities listed in the planning software at the time of contract award:

> The cost of performing the work directed in the DOE Contracting Officer's March 26, 2004 letter was $99 million.
>
> . . . Thus, the <u>expenditure of $99 million to perform the added non-fee-baring work reduced the $503 million that originally was available [according to CH2M analysis of the planning software at contract award] for fee-bearing work to $404 million</u>.

Decl, at 3 (emphasis and brackets added).

CH2M implies that for the agency to properly have required $99 million to be spent on safety measures, the agency should have obtained an appropriation for an additional $99 million. In

this way, the vapors claim mirrors the second segment of the funding claim.

There is no need to look for implications to establish that the first segment of the funding claim mirrors the vapors claim; the rationale is identical. CH2M alleges that $53 million of the funding claim was caused by the agency's direction to CH2M to do work not listed in the planning software at the start of the contract:

> for the period FY2003 through FY2006, DOE added $53 million in additional work to the contract. DOE refused to assign fee earning opportunities for the completion of that additional work. Thus, the $53 million also had to be deducted from the amount available for fee-bearing work . . .

Decl, at 5. Again, CH2M alleges that the agency "diverted" funding by directing CH2M to perform work not listed in the planning software at the time of contract award.

The second segment of the funding claim is simply an allegation that the agency did not obtain a large enough appropriation to meet the alleged contractual obligation to fund certain work listed in the planning software at the time of contract award:

> As a result of DOE's failure to request sufficient funds from Congress, the Contract funding that DOE provided to CH2M HILL to fund the remaining scope of work in FY 2006 was $69 million less than required by Contract Section B.3 and the approved Baseline.
>
> . . . resulted in a total decrease in the amount of funding available for fee-bearing

> work by another $122 million (i.e., $69M + 53M). This was separate from the $99 million reduction covered by the Vapors Claim.

Decl, at 5 (emphasis added).

At the end of the passage just quoted, CH2M insists that the $53 million spent on work not listed in the planning software at the start of the contract identified in the first segment of the funding claim is "separate from" the $99 million spent on work not listed in the planning software at the start of the contract identified in the vapors claim. Decl, at 5. Of course, the work and the costs are "separate" -- because the work and the costs are different. However, the underlying legal theory for both claims is identical: CH2M alleges that the contract required a specific level of funding, alleges that the planning software defines "fee-bearing" work; alleges that the planning software defines the amount of money that the agency must spend upon "fee-bearing" work, and alleges that any departure from the initial planning software assumptions constitutes a change for which CH2M is entitled to compensation.

Similarly, the second segment of the funding claim (i.e., the allegation that the appropriations sought were too small) is based upon the same basic set of allegations concerning the contract: that the contract required a specific level of funding, and required a specific level of funding needed to be spent on "fee-bearing" work allegedly defined in the planning software.

In summary, CH2M's own declaration confirms the common contract interpretation issues underlying both the vapors claim and the funding claim. To avoid inconsistent rulings, these common legal issues should be decided by a single tribunal.

II. Overlapping Issues Of Causation And Damages

We doubt that this Court will accept CH2M's contract interpretations, and thus no finding of liability is likely in either case. However, assuming for the sake of argument that CH2M could prove liability, there would be enormous overlap in the issues of causation and damages.

In summary, both complaints filed by CH2M assume that the sole reason causing CH2M to fail to earn fee was a lack of funding (either because funds were "diverted" to other work, or because insufficient effort was made to obtain appropriations). In rebuttal, the United States will demonstrate that CH2M failed to earn fee because of poor management.

Our proof of poor management, and the impact upon CH2M's efforts to obtain fee, will be the same in both cases. In both cases, CH2M's overall performance of the contract will be at issue.

Such overlapping issues in a construction contract case is somewhat unusual. In a typical construction contract case, claims often arise from various activities during the construction. For example, a builder might allege one claim with respect to pouring the foundation for a building, and another

claim with regard to installation of a heating, ventilation and air conditioning system. Such claims would arise from different work performed at different times, and would probably involve different subcontractors. In short, different claims arising from the same construction contract often involve different issues and different proof.

This case is fundamentally different because the claims do not arise from work performed. Instead, the claims are based upon work never performed.

Here, CH2M seeks to have the Court and the board speculate concerning what work would have been performed and what fee would have been earned if the agency had spent more money on the contract. If such analysis is made for either case, the analysis must consider the agency's defense that CH2M's overall performance demonstrates that CH2M's own poor management was the reason CH2M failed to earn more fee.

A single tribunal should consider this issue.

First, the relevant discovery and trial of these issues is likely to be burdensome, and should be done only once. Second, there is a risk of inconsistent results if two tribunals address the same issues. Third, damages may not be coherently assessed until some total amount of additional funding owed is calculated, and a single evaluation is conducted to determine what fee likely would have been earned with that amount of additional funding.

With respect to the third point, it is important to note

that there is only a single schedule for incentive fee. Moreover, if hypothetical performance by CH2M is to serve as the basis for evaluating what fee would have been earned pursuant to that schedule, it is important that a single hypothetical performance is assumed for both cases. It is irrational to assume one hypothetical performance for one case, and a different hypothetical performance for the second case.

In its response, CH2M places great emphasis upon the fact that it has given two separate labels to the amounts of damages sought in the two claims. Specifically, CH2M contends that it seeks damages from one portion of the incentive fee schedule for the vapors claim, and damages from a different portion of the incentive fee schedule for the funding claim.

> The Vapors Appeal includes fee associated with four of those fifteen tanks. The Funding Appeal includes fee associated with four separate (additional) tanks out of the fifteen.

CH2M Response, at 7.[2] CH2M's contention is fallacious for two reasons. First, there is no logical connection between the claims and the alleged bases for the damages. Second, the labels become completely meaningless if CH2M does not establish liability for the entire "$221 million shortfall."

Both the vapors claim and the funding claim merely allege

---

[2] "CH2M Response" refers to "Plaintiff's opposition to defendant's motion to consolidate this action with CBCA No. 708," filed October 22, 2007.

that insufficient money was available to CH2M to perform work. There is no reason to connect the "insufficient money" in the vapors claim or the funding claim to any particular task or any particular portion of the incentive fee schedule. With an additional dollar, CH2M had the ability to do a dollar's worth of additional work upon any task and to seek any amount of related fee.

CH2M alleges that it would have used $99 million allegedly diverted to protective measures (vapors claim) to address four certain tanks identified in the fee schedule, but there is no actual connection between those protective measures and those particular four tanks. CH2M is not alleging that protective measures were used to perform work on those four tanks. To the contrary, CH2M concedes that no work was performed with regard to those four tanks.

Similarly, there is no basis to connect the $122 million shortfall alleged in the funding claim with the incentive fee goals cited by CH2M for its proof of damages. Again, the work was never performed.

Moreover, CH2M's allocation of its damages to separate portions of the fee schedule collapses entirely if CH2M fails to establish liability for its entire claim of a $221 shortfall because incentive fee goals could only be achieved in sequence. It is irrational to suppose that CH2M should be awarded a portion of some fee from one part of the incentive fee schedule and a

portion of some fee from another part of the schedule. Quite simply, the contract was not, and would not have been performed in such a scattershot fashion.

For example, if the Court were to find liability for only $28 million for the vapors claim, and $20 million for the funding claim, then the total amount of work underfunded would be only $48 million. What portion of the fee schedule would be relevant? Would CH2M seek to show how much fee would be earned if $28 million more were spent on one or more of the four tanks, and $20 million more were spent on miscellaneous items listed elsewhere in the fee schedule? The contract required a more orderly approach to contract performance, and any reasonable damages calculation must start from the assumption that there could be only one course of contract performance, and that any additional funds that may deemed to have become available would have been spent in a coherent fashion, and would have earned fee to a certain degree against a single progression of incentive fee schedule goals. Such an orderly analysis is only possible if a single tribunal considers the issues of causation and damages.

III. <u>Common Legal And Proof Issues Are Predominant</u>

As demonstrated above, the central contract interpretation issues in this case and in the board case are the same. Moreover, even assuming for the sake of argument that CH2M could establish liability, there would be huge overlap in the issues of causation and damages. Indeed, in both cases, causation and

damages would put at issue the entire performance of CH2M (to determine the degree to which mismanagement caused CH2M to miss incentive fee goals). Thus, the same documents and the same witnesses (located near Richland, Washington) would be central to the proof of causation and damages in both cases.

In contrast, CH2M cites only peripheral issues to support its contention that the vapor claim and the funding claim have different natures. For example, in connection with the vapors claim, CH2M argues that protective measures were outside the scope of activities listed in the planning software. CH2M Response, at 13 ("The ultimate issue in the Vapors appeal is whether the Contract as it existed on March 29, 2004 required CH2M Hill to take certain actions relating to the so-called "Legacy Vapor Issues" or whether DOE's direction to CH2M Hill to take those actions was a change.") As demonstrated above, the larger issues in the vapors claim case are whether the contract required any particular level of funding, whether the planning software established the scope of work, and whether the planning software established the scope of required funding. These larger issues are common to the funding claim case.

For another example, CH2M cites only a peripheral issue to support the claimed unique quality of the funding claim case; CH2M cites the actions taken by agency officials in Washington, D.C. with regard to appropriations requests. CH2M Response, at 16. Again, the larger issues in the funding claim case are

whether the contract required any particular level of funding, whether the planning software established the scope of work, and whether the planning software established the scope of required funding. These larger issues are common to the vapors claim case. Moreover, the actions at headquarters cited by CH2M are entirely peripheral to -- or have no bearing on -- the first segment of CH2M's funding claim (out-of-scope work that diverted $53 million).

In summary, the most important legal and factual issues are common to both cases.

IV. The Six Factors

As demonstrated in our motion for consolidation, the relevant statute and case law establishes that cases arising from the same contract should be consolidated when consolidation is supported by the interests of justice and judicial economy. Based upon the complaints filed in both cases, and the declaration filed by CH2M in response to our motion, we have demonstrated the need for consolidation.

In its response, CH2M urges the Court to make a more formulaic review of six factors discussed in certain decisions concerning consolidation. In our view, there is no meaningful distinction between the legal standard set forth in our motion and the legal standard set forth the cases cited by CH2M. The six factors cited by CH2M are no more than a handy checklist of factors that may be considered when a Court evaluates whether the

interests of justice and judicial economy support consolidation. However, in the hope of further assisting the Court, we respectfully repeat our argument briefly in the context of the six factors cited by CH2M. See CH2M Response, at 3.

A. Same Contract

Both cases arise from the same contract. Moreover, the same issues of contract interpretation will be central to both cases (whether certain funding levels were required, whether the planning software establishes the scope of work, whether the planning software establishes the scope of required funding, etc.).

B. Same Issues

The contract interpretation issues relevant to a liability determination are common. In addition, broad factual issues related to causation and damages are common. Certain peripheral issues are unique in each case.

C. Plaintiff's Choice Of Forum

In its response, CH2M concedes that the Court should be "sensitive to the reasons why the suits have been split." CH2M Response, at 2. Accordingly, CH2M's choice of separate forums is entitled to little weight.

CH2M has offered no convincing rationale for separate proceedings. Indeed, CH2M's own declaration vividly demonstrates the common nature of the claims at issue in both cases.

D. Significant Progress In One Proceeding

Both proceedings are in their initial stages; discovery is the next stage in each proceeding. In many ways, more progress has been made in this case. This Court has entertained more focused analysis of the nature of the claims than has been presented to the board.

E. Inefficient Use Of Resources

This factor strongly supports consolidation. If these cases cannot be resolved upon motion (based upon contract interpretations), then lengthy discovery and trial concerning CH2M's contract performance seems likely. It would be extremely wasteful to conduct such discovery and trial twice, in parallel proceedings.

F. Inconsistent Rulings

This factor strongly supports consolidation. As demonstrated above, there are common legal and factual issues central to both cases. Moreover, it will be impossible to approach causation and damages in a coherent fashion if the proceedings are not consolidated.

IV. Consolidation Should Be Before This Court

Proceedings in this Court are more advanced at this point because the issues important to both cases have been explored by the parties, and considered by this tribunal. In contrast, the board has not yet been required to invest such significant time to consideration of the nature of the claims.

In addition, this Court has the broader jurisdiction. To the extent that the funding claim may raise issues of appropriations law or the duties of agency officials, this Court's broader jurisdiction and broader experience will be an advantage to the just and efficient disposition of these cases.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consolidate plaintiff's Case No. 708, filed with the CBCA, with the instant case in this Court.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

November 8, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on November 8, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE IN THIS COURT, A COMPANION CASE, CURRENTLY PENDING BEFORE THE CIVILIAN BOARD OF CONTRACT APPEALS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier