# PART I – THE SCHEDULE
## SECTION H
## SPECIAL PROVISIONS

TABLE OF CONTENTS


| Clause | Title | Page |
|---|---|---|
| H.1 | PERFORMANCE BASED INCENTIVES, FEE DISTRIBUTION AND FEE POOL | 3 |
| H.2 | INCREMENTAL AND PROVISIONAL PAYMENTS OF FEE | 5 |
| H.3 | CONDITIONAL PAYMENT OF FEE (CPOF) SITE SPECIFIC PERFORMANCE CRITERIA/REQUIREMENTS | 6 |
| H.4 | MODIFICATION AUTHORITY | 8 |
| H. 5 | GUARANTEE OF PERFORMANCE | 8 |
| H.6 | RESPONSIBLE CORPORATE OFFICIAL | 9 |
| H.7 | REPRESENTATIONS AND CERTIFICATIONS | 9 |
| H.8 | PROJECT CONTROLS | 9 |
| H.9 | SMALL BUSINESS SUBCONTRACTING PLAN | 10 |
| H.10 | SUBCONTRACTS | 11 |
| H.11 | WITHDRAWAL OF WORK | 11 |
| H.12 | ASSIGNMENT OF DOE PRIME CONTRACTS | 11 |
| H.13 | ASSIGNMENT | 12 |
| H.14 | LEGAL MANAGEMENT PLAN | 12 |
| H.15 | THIRD PARTIES | 12 |
| H.16 | EMERGENCY CLAUSE | 12 |
| H.17 | SHUTDOWN AUTHORIZATION | 12 |
| H.18 | PAYMENT BONDS AND PERFORMANCE BONDS | 13 |
| H.19 | TRAVEL RESTRICTIONS | 13 |
| H.20 | SEPARATE BUSINESS UNIT | 14 |
| H.21 | SEGREGATION OF COSTS | 15 |
| H.22 | INDIRECT COST ALLOCATIONS | 15 |
| H.23 | EARNED VALUE MANAGEMENT SYSTEM | 15 |
| H.24 | FINANCIAL MANAGEMENT SYSTEM | 16 |
| H.25 | ENGINEERING STANDARDS, DESIGN CRITERIA, AND CONSTRUCTION STANDARDS | 16 |
| H.26 | LEGAL AGREEMENTS (TRI-PARTY AGREEMENT AND OTHERS) | 16 |
| H.27 | ENVIRONMENTAL RESPONSIBILITY | 17 |
| H.28 | CONTRACTOR DELIVERABLES FOR EXTERNAL REGULATORS OR AGENCIES | 20 |
| H.29 | HAZARDOUS MATERIALS | 20 |
| H.30 | PRESERVATION OF ANTIQUITIES AND LAND AREAS | 20 |
| H.31 | QUALITY ASSURANCE SYSTEM | 21 |
| H.32 | SUBCONTRACTOR ENVIRONMENT, SAFETY, QUALITY, AND HEALTH REQUIREMENTS | 21 |
| H.33 | LABOR RELATIONS | 22 |
| H.34 | ADVANCE UNDERSTANDING ON PERSONNEL COSTS, POLICIES AND PROCEDURES | 23 |
| H.35 | DETERMINATION OF APPROPRIATE LABOR STANDARDS | 23 |
| H.36 | WORKFORCE RESTRUCTURING | 23 |
| H.37 | IMPLEMENTATION OF THE HANFORD SITE STABILIZATION AGREEMENT | 23 |
| H.38 | WORKERS COMPENSATION | 25 |
| H.39 | INFORMATION | 26 |
| H.40 | LOBBYING RESTRICTIONS (*ENERGY AND WATER DEVELOPMENT APPROPRIATIONS ACT, 2001)* | 28 |
| H.41 | LOBBYING RESTRICTIONS (*DEPARTMENT OF INTERIOR AND RELATED AGENCIES APPROPRIATIONS ACT, 2001*) | 28 |
| H.42 | ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION PROGRAM ACT (EEOICPA) | 28 |
| H.43 | USE OF DOE FACILITIES | 29 |

H.44 RESERVED ........ 29
H.45 RESERVED ........ 29
H.46 RESERVED ........ 29
H.47 NON-COMMERCIAL AVIATION ACTIVITIES AND SERVICES ........ 29
H.48 FEE REDUCTION FOR CHANGES IN KEY PERSONNEL ........ 29

## PART I – THE SCHEDULE
## SECTION H
## SPECIAL PROVISIONS

### H.1 PERFORMANCE BASED INCENTIVES, FEE DISTRIBUTION AND FEE POOL

(a) Establishment of Performance Based Incentives (PBIs)

Performance Based Incentives (PBIs) set forth agreed upon incentive fee and the requirements, criteria and/or specifications for acceptable performance. The PBI shall also include any Government Furnished Services/items and Commitments applicable to the PBI. The PBI format is included in Section J, Appendix D, *Performance Based Incentives*.

PBIs and related fee distribution for the term of the Contract shall be established based on the work activities described in Section C, *Statement of Work* and the PBI. PBI completion criteria will be set forth in each PBI. The PBIs and related fee distribution will be incorporated into the Contract in Section J, Appendix D, *Performance Based Incentives*.

PBIs and fee distribution will emphasize completion of mission scope as set forth in the desired outcome section of the PBI. PBIs shall be mutually agreed upon at the beginning of the Contract term. PBIs may be updated when determined necessary and new PBIs may be created during the Contract term. The U.S. Department of Energy (DOE) shall incorporate the agreed to PBIs into the Contract.

If agreement on initial, updated or new PBIs cannot be reached, the Contracting Officer may make the determination regarding PBIs and related fee distribution, and may unilaterally incorporate that determination into the Contract. However, if the Contractor disagrees with the DOE established PBIs and related fee distribution; the Contractor may appeal to the Head of Contracting Activity (HCA). The final decision will be at the unilateral discretion of the HCA.

(b) Interference

In the event that the Contractor believes that DOE has interfered with its ability to meet specific performance expectations, it may present evidence to support this position along with a proposed adjustment to the HCA. The HCA shall make a unilateral determination and shall provide a copy of that determination to the Contractor.

This Contract is established with the intent that the Contractor will generate operational savings that the Contractor can utilize for the purpose of completing all incentivized work addressed by the incentive set, provided that the Contractor is making appropriate progress on all unincentivized work covered by this Contract.

(c) Incentives

The PBIs shall establish the fee directly assigned to the accomplishment of each PBI. The PBIs will indicate whether an incentive fee payment which may be available under that PBI is incremental or provisional as defined in Section H, Clause entitled, *Incremental and Provisional Payments of Fee*.

(d) Fee Re-Allocation due to Cancellation or Changes

If, for any reason, DOE cancels an expectation defined in a PBI, DOE and Contractor shall seek to mutually agree to any partial fee payable to Contractor for partial completion of the cancelled PBI expectation. Any unpaid fee attached to that expectation of the cancelled PBI shall be reallocated to a new PBI expectation, or to existing other PBI expectations, or to a combination of new and existing PBI expectations. The Contracting Officer shall make the reallocation decision and the final determination of entitlement to partial fee. However, if the Contractor disagrees with the Contracting Officer's decision, the Contractor may appeal to the HCA, who shall unilaterally decide the issue.

(e) Fee Determinations

PBIs may be either annual or multi-year in duration and include annual or multi-year end points. When a PBI fee bearing milestone is completed, Contractor shall submit its request for payment of fee which shall include any documents required by the PBI to support Contractor's claim for fee. DOE will make a fee determination within 45 days after submission of Contractor's claim for payment of fee. The final determination that the Contractor met the requirements of the PBI and is entitled to the payment of fee shall be made at the unilateral discretion of the HCA.

(f) Acceleration Fee

Acceleration PBIs or Acceleration Fee (previously referred to as Superstretch) earning milestones within a PBI may be established to challenge the Contractor to accomplish significant and mission critical work activities beyond the work currently funded or which significantly accelerate workscope. Acceleration PBIs will be agreed upon prior to commencement of work and incorporated into the contract in Section J, Appendix D, *Performance Based Incentives*.

The funds for accomplishing an Acceleration PBI or acceleration fee earning milestone in a PBI will be obtained from cost savings realized through efficiencies and/or workscope deletions and not deferrals. The Contracting Officer shall approve workscope deletions. Prior to initiation of the acceleration fee bearing workscope the Contractor shall provide a notice to DOE that includes an affirmative statement that the acceleration workscope will be performed from cost savings, except as provided for in the PBIs.

The fee for completion of the Acceleration PBI or Acceleration fee milestone in a PBI, will be paid from cost savings and will be outside the fee pool identified in the Section B Clause entitled, *Estimated Cost and Fee*. The fee payments for completion of Acceleration PBIs or Acceleration fee milestones will be separate from and not subject to or impact the provisional payment of fee limitations described in the Section H, Clause entitled, *Incremental and Provisional Payments of Fee*.

(g) Multi-Year Performance Based Incentives

A multi-year performance based incentive is any PBI in which the requirements are established in one fiscal year but the final completion date extends into a future fiscal year.

(h) Fee Pool:

It is the intent of the parties that the entire fee pool identified in the Section B Clause entitled, *Estimated Cost and Fee*, will be allocated and made available during the contract term by assigning fee to the annual or multi-year PBIs. The allocation is at the unilateral discretion of the Contracting Officer. However, if the Contractor disagrees with the Contracting Officer's decision, the Contractor may appeal to the HCA, who shall unilaterally decide the issue.

Fee from the annual and multi-year PBIs, which is unearned for failure to meet PBI requirements shall not be returned to the unallocated fee pool, and shall be applied to other baseline work. This will be documented on an approved change request. The total estimated fee pool may be adjusted in accordance with the Section B Clause entitled, *Estimated Cost and Fee*.

(i) Cost and Schedule Constraint:

Contractor shall perform all Contract work within DOE established cost and schedule constraints and Contractor cost and schedule performance is subject to the provisions set forth by the Section I Clause entitled, *Conditional Payment of Fee, Profit, or Incentives, Alternate 1.*

(j) Evaluation Period Definition

An evaluation period, as used in Section I Clause, DEAR 970.5215-3, "Conditional Payment of Fee, Profit, or Incentives, Alternate 1," is defined as consecutive one year periods commencing with the first evaluation period which runs from October 1, 2002 to September 30, 2003. For the period beginning October 1, 2006, "evaluation period shall mean each quarter". The earned fee amount means the amount of provisional and incremental fee the Contractor earns in an evaluation period. In accordance with Section I Clause, *Conditional Payment of Fee, Profit, or Incentives, Alternate 1*, fee reductions (repayment) will occur immediately following the action by the Office of River Protection, HCA. The Contractor shall submit any repayment within 10 working days of receipt of notification from the HCA.

## H.2 INCREMENTAL AND PROVISIONAL PAYMENTS OF FEE

(a) An incremental payment of fee is non-provisional payment and may be earned by the Contractor for completed milestones (or incremental fee bearing milestone or work elements) that are determined to have significant lasting, intrinsic value and that are specified in a particular PBI. Incremental payments earned by the Contractor are not generally subject to refund for failure to complete all or any portion of any other incremental fee bearing work element in a PBI. Incremental payments may be made based upon earned value, completion of milestones or any other methodology set forth in the PBI.

(b) A provisional payment of fee may be made for partial completion of a PBI or incremental fee bearing milestone or work element. Provisional payments may be made based upon the completion of events and/or milestones, earned value, or any other methodology agreed to by the DOE and Contractor. If the Contractor fails to fully accomplish a PBI or incremental fee bearing milestone or work element for which it has received provisional payments, it will refund all provisional payments it has received for that PBI or incremental fee bearing milestone or work element, plus interest from the date of receipt of the provisional payments. Interest will be paid at the rate established in accordance with the Section I clause entitled *Interest*. Provisional payment of fee invoices will be at

the discretion of the Contracting Officer. DOE agrees to authorize payment of the provisional fee no later than 10 business days from receipt of invoice.

## H.3 CONDITIONAL PAYMENT OF FEE (CPOF) SITE SPECIFIC PERFORMANCE CRITERIA/REQUIREMENTS

This Clause supplements Contract Clause I.20, DEAR 970.5215-3 (JAN 2004), *Conditional Payment of Fee, Profit, and Other Incentives-Facility Management Contracts, Alternate II*, by establishing site-specific Environment, Safety and Health (ES&H), and Security performance criteria/requirements. Performance failures relating to the performance criteria set forth in this Clause will be processed in accordance with the provisions of Clause I.20, DEAR 970.5215-3, *Alternate II*. The site-specific performance criteria/requirements contained herein will be reviewed periodically and may be modified by mutual agreement.

For the purposes of applying this Clause, the term evaluation period (each quarter) shall mean the period in which the performance failure occurred. Failure to make corrective actions in a timely manner may constitute an independent basis for reductions being taken from subsequent evaluation periods.

Site Specific Performance Criteria/Requirements in Clause I.20, DEAR 970.5215-3, *Alternate II* for (c) Environment, Safety and Health (ES&H), and (d) Safeguarding Restricted Data and Other Classified Information are as follows:

(a) Environment, Safety and Health (ES&H)

1. Third Degree: Performance failures that reflect a lack of focus on improving ES&H. They include failures to comply with an approved Integrated Safety Management System (ISMS) that result in potential breakdown of the System. The following performance failures or performance failures of similar import will be considered third degree:

   (i) Failure to report data necessary to demonstrate compliance to enforceable regulations.

   (ii) OSHA Total Recordable Case Rate - Two consecutive quarters that the Tank Farm Contractor quarterly average exceeds 2.6 cases/200,000 hours.

   (iii) OSHA Lost Work Day (Days Away from Work, or Restricted Work Days, or both) Case Rate - Two consecutive quarters that the Tank Farm Contractor quarterly average exceeds 1.7 cases/200,000 hours.

   (iv) Environmental Permit Violations - Two or more permit violations in a 12-month period.

   (v) Control of Radioactive Contamination –

      a) An event resulting in the loss of control of radioactive material to the public from ORP-managed facilities/activities exceeding 20 times 10 CFR 835, Appendix E, values.

      b) An event resulting in the estimated loss, damage and/or clean-up to property exceeding $500,000.

c) A single occurrence in any 12 month period resulting in the skin contaminations of 5 or more individuals at a level exceeding the total contamination limits identified in 10 CFR 835, Appendix D.

d) A single event in which 5 or more individuals or 5 or more events in any 12 month period in which 1 or more individuals exceed confirmed internal depositions greater than 100 mRem.

e) Multiple radiological events at one or more facilities that in aggregate indicate a significant breakdown of ISMS of the radiological safety program.

(vi) Control of Radiation Exposure –

a) Radiation exposure to an individual exceeding 2.0 Rem total effective dose equivalent in a calendar year without prior DOE approval, or exposure to an individual exceeding any of the limits of 10 CFR 835.202, 835.206, 835.207, or 835.208.

b) Three or more individuals exceed confirmed internal depositions greater than 1.0 Rem CEDE in any 12-month period.

(vii) Technical Safety Requirement/Operational Safety Requirement Violation - Greater than 3 incidents at an individual nuclear facility/activity or greater than 10 incidents overall in any 12 month period.

(viii) Positive Unreviewed Safety Question Determinations Not Self-Identified - Greater than 1 incident at an individual nuclear facility/activity or greater than 3 incidents overall in any 12 month period.

(ix) Criticality Safety Infraction Not Self-Identified - Greater than 1 incident at a nuclear facility/activity in any 12 month period.

(x) Transportation Safety – Two or more Tank Farm Contractor events, as defined by DOE Manual 231.1-2, Group 8, Criteria 1, 2 or 3 in any 12 month period.

(d) *Safeguarding Restricted Data and Other Classified Information*

(1) First Degree: Performance failures that have been determined, in accordance with applicable law, DOE regulation, or directive, to have resulted in, or that can reasonably be expected to result in, exceptionally grave damage to the national security. The following are examples of performance failures or performance failures of similar import that will be considered first degree:

(i) Theft, loss or diversion of category I or II special nuclear material (SNM) that is due to a failure or inadequacy of performance by the contractor.

(2) Second Degree: Performance failures that have been determined, in accordance with applicable law, DOE regulation, or directive, to have actually resulted in, or that can reasonably be expected to result in, serious damage to the national security. The following are examples of performance failures or performance failures of similar import that will be considered second degree:

(i) Theft, loss or diversion of category III or IV special nuclear material, or any non-SNM radioactive, sensitive, or dangerous material that is due to a failure or inadequacy of performance by the contractor.

(3) Third Degree: Performance failures that have been determined, in accordance with applicable law, regulation, or DOE directive, to have actually resulted in, or that can reasonably be expected to result in, undue risk to the common defense and security. In addition, this category includes performance failures that result from a lack of Contractor management and/or employee attention to the proper safeguarding of Restricted Data and other classified information. These performance failures may be indicators of future, more severe performance failures and/or conditions, and if identified and corrected early would prevent serious incidents. The following are examples of performance failures or performance failures of similar import that will be considered third degree:

(i) Negligent weapons or firearms-related incidents involving protective force operations/personnel (e.g., accidental weapons discharge, personal wounding).

(ii) Inventory differences of Category I/II/III SNM, or greater than 50g of Tritium, beyond alarm limits where there is no evidence that the difference is created by loss, theft, or diversion.

## H.4 MODIFICATION AUTHORITY

Not withstanding any of the other provisions of this contract, the Contracting Officer shall be the only individual on behalf of the Government authorized to:

(a) Accept non-conforming work;

(b) Waive any requirement of this Contract; or

(c) Modify any term or condition of this Contract.

## H. 5 GUARANTEE OF PERFORMANCE

The Contractor or the Contractor's parent organization(s) has (have) provided a Guarantee of Performance in a manner and form acceptable to the Contracting Officer assuring the performance, duties, and responsibilities of the Contractor, including repayment of unearned provisional fee, will be satisfactorily fulfilled. The Guarantee of Performance submitted on the date of this Contract modification is incorporated herein by reference and made part of this Contract.

## H.6 RESPONSIBLE CORPORATE OFFICIAL

The Contractor shall guarantee performance as evidenced by the Guarantee of Performance referred to in Section H Clause entitled, *Guarantee of Performance*. If a separate business entity is established for this Contract, the Contractor's parent company shall guarantee performance as evidenced by the Guarantee of Performance referred to in Section H Clause entitled, *Guarantee of Performance*. If the Contractor is a joint venture or other similar entity where more than one company is involved, the parent companies shall assume joint and several liabilities for the performance of the Contractor. In the event that any of the signatories to the Guarantee of Performance enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the Contractor agrees to furnish written notification of the bankruptcy to the Contracting Officer. Notwithstanding the provisions of this Clause, the Government may contact, as necessary, the single responsible corporate official identified below, who is at a level above the Project Manager for the Contractor and who is accountable for the performance of the Contractor, regarding Contractor performance issues. Should the responsible corporate official change during the period of the Contract, the Contractor shall promptly notify the Contracting Officer in writing of the change in the individual to Contract.

| | |
|---|---|
| Name: | Ralph Peterson |
| Position/Company: | President and CEO, CH2M HILL, LTD. |
| Position/Organization: | Chairman, Board of Directors, CH2M HILL Hanford Group, Inc. |
| Address: | 9191 South Jamaica Street, Englewood, CO 80112 |
| Phone: | (303) 713-2522 |
| Facsimile: | (303) 220-5106 |
| E-mail: | rpeterso@ch2m.com |

## H.7 REPRESENTATIONS AND CERTIFICATIONS

The Representations and Certifications, (Section K) submitted by the Contractor dated November 14, 2000, are hereby incorporated into this Contract by reference.

## H.8 PROJECT CONTROLS

(a) In the performance of this Contract, the Contractor shall establish, maintain and use a project control system meeting the requirements specified in the Contract and identified below. The Contractor may use a pre-existing project control system, if such system satisfactorily addresses the system requirements defined in the Contract and identified below.

(b) The project control system must meet the requirements of the following DOE guidance:

(1) *Integrated Planning, Accountability, and Budgeting System – Information Systems (IPABS-IS) Data Requirements*, (https://ipabs-is.em.doe.gov/ipabs/);

(2) *Integrated Planning, Accountability, and Budgeting System (IPABS) Handbook*, February 16, 1999;

(3) DOE Order 413.3, *Program and Project Management for the Acquisition of Capital Assets*.

(c) Work Authorization. Approval of this Contract provides authorization for the Contractor to perform, subject to other Contract requirements, the full scope of work in the Contract. Any Contractor requested changes or DOE directed changes shall be addressed through the established change control process.

(d) The Contractor will primarily implement Section I Clause DEAR 970.5222-2, *Overtime Management*, through incorporation of its policies and inclusion of information relating to overtime usage in the current project management tools of project planning and project

performance measurement. DOE reserves the right to require the submission of a separate plan for approval by DOE containing the data specified in DEAR 970.5222-2, should the Contracting Officer determine that action is necessary in accordance with requirements of that Clause.

## H.9 SMALL BUSINESS SUBCONTRACTING PLAN

(a) The Contractor shall submit a Small Business Subcontracting Plan for fiscal year (FY) 2001, and shall submit a revision to the plan within thirty (30) days of the beginning of each subsequent FY of the contract period. Once the Contracting Officer approves the plan, it will be incorporated into the Contract as Section J, Appendix I, *Small Business Subcontracting Plan*. Any revisions thereto shall be approved by the Contracting Officer and incorporated into the contract by a separate Contract modification.

(b) The subcontracting plan will identify goals as specified by the Section I Clauses entitled, *Utilization of Small Business Concerns* and *Small Business Subcontracting Plan*. The plans shall provide meaningful opportunities for local and Regional businesses.

(c) The Contractor commits to strengthen its small business subcontracting program.

(1) The Contractor's program will identify candidate work scope areas for which competitions among all categories of small businesses may be held, (categories of small businesses as defined in the Federal Acquisition Regulation (FAR) in Part 19 and elsewhere in the FAR, and as supplemented by the Department of Energy Acquisition Regulation e.g., small disadvantaged businesses, HUBZone businesses, women-owned small businesses, veteran owned small businesses, and other small businesses).

(2) The Contractor will seek to pre-qualify a pool of small businesses that are eligible for placement of task orders. The Contractor will develop placement procedures that will provide each small business (awardee) a fair opportunity to be considered for each order. The Contractor will not use any method (such as allocation or designation of any preferred awardee) that would not result in fair consideration being given to all awardees prior to placing each order. Exceptions are as follows: (a) only one awardee is capable of providing the supplies or services required at the level of quality required, because the supplies or services ordered are unique or highly specialized, (b) the order must be issued on a sole-source basis in the interest of economy and efficiency as a logical follow-on to an order already issued under the contract, provided that all awardees were given a fair opportunity to be considered for the original order, or (c) it is necessary to place an order to satisfy a minimum guarantee.

(3) The Contractor will designate an ombudsman for this program. The ombudsman must review complaints from the small businesses in the program and ensure they are afforded a fair opportunity to be considered, consistent with the procedures in the individual subcontracts.

## H.10 SUBCONTRACTS

(a) Prior to the placement of subcontracts and in accordance with Section I Clause entitled, *Contractor Purchasing System*, the Contractor shall ensure that any required prior notice and description of the subcontract is given to the Contracting Officer and any required consent is received. Except as may be expressly set forth therein, any consent by the Contracting Officer to the placement of subcontracts shall not be construed to constitute approval of the Subcontractor or any subcontract terms or conditions, determination of the allowability of any cost, revision of this contract or any of the respective obligations of the parties there under, or creation of any Subcontractor privity of contract with the Government.

(b) Notwithstanding the requirements of DEAR 970.4402-3(a) and in accordance with DEAR 970.4402-3(b), *Purchasing from Contractor-Affiliated Sources*, the Contractor is authorized to obtain services to fulfill this contract from Contractor affiliated sources for performance of contract work itself (as distinguished from the purchase of supplies and services needed in connection with the performance of work) on an as needed basis. All requirements of DEAR 970.4402-3(b) shall be complied with.

(c) The Contractor shall award subcontracts for conceptual and detailed design, and construction contemplated under the contract, unless prior Contracting Officer approval is obtained. If CH2M HILL self performs Construction, the Contracting Officer may require specific FAR Construction Clauses as previously identified in CH2M HILL Contract modification M030 to be implemented. The Contractor further agrees to identify its core competencies and consider these in its entire make or buy decisions. The identification of core competencies shall be submitted to the Contracting Officer within ninety (90) days of execution of this Contract.

## H.11 WITHDRAWAL OF WORK

(a) The Contracting Officer reserves the right to have any of the work contemplated by Section C, *Statement of Work*, of this contract performed by either another Contractor or to have the work performed by Government employees.

(b) Work may be withdrawn: (1) in order for the Government to conduct pilot programs; (2) if the Contractor's estimated cost of the work is considered unreasonable; (3) for less than satisfactory performance by the Contractor; or (4) or any other reason deemed by the Contracting Officer to be in the best interests of the Government. The U.S. Department of Energy (DOE) reserves the right to direct the assignment of any subcontract, including lower-tier subcontracts, to DOE whenever it deems it in its best interests.

(c) If the withdrawn work has been authorized and funds obligated under Section B Clause entitled, *Obligation of Funds*, the work shall be terminated in accordance with the procedures in the Section I Clause entitled, *Termination (Cost-Reimbursement)*.

(d) If the Contracting Officer withdraws any work, the Contractor agrees to fully cooperate with the new performing entity and to provide whatever support is required.

## H.12 ASSIGNMENT OF DOE PRIME CONTRACTS

During the period of performance of this Contract it may become necessary for the U.S. Department of Energy (DOE) to transfer and assign to this Contract (and Contractor agrees to accept) existing or future DOE prime contracts supporting River Protection Project work. The transfer of these prime contracts will be for administration purposes and in effect the transferred contracts will become subcontracts to this Contract.

## H.13 ASSIGNMENT

Neither this Contract nor any interest therein nor claim thereunder shall be assigned or transferred by the Contractor except as expressly authorized in writing by the Contracting Officer.

## H.14 LEGAL MANAGEMENT PLAN

This Contract is subject to the requirements of 10 Code of Federal Regulations Part 719, expected to be published in the Federal Register in January 2001, and the Contractor agrees to comply with the requirements as published therein. The Contractor is authorized to continue operating under its DOE approved Litigation Management Plan, until the proposed rule becomes final and the new Legal Management Plan is approved.

## H.15 THIRD PARTIES

Nothing contained in this Contract or its amendments shall be construed to grant, vest, or create any rights in any person not a party to this Contract. This provision is not intended to limit or impair the rights, which any person may have under applicable Federal Statutes.

## H.16 EMERGENCY CLAUSE

The Manager, U.S. Department of Energy, Office of River Protection (DOE-ORP), or designee shall have sole discretion to determine when an emergency situation exists as a result of facility operations within the physical boundaries defined by this contract affecting personnel, public health, safety, the environment, or security. The Manager, Richland Operations Office, or designee has the discretion to determine when an emergency condition exists elsewhere on the Hanford Site that may affect DOE-ORP employees. In the event the Manager, DOE-ORP, or designee determines such an emergency exists, the Manager, DOE-ORP, or designee will have the authority to direct any and all activities of the Contractor and subcontractors necessary to resolve the emergency situation. The Manager, DOE-ORP, or designee may direct the activities of the Contractor and subcontractors throughout the duration of the emergency.

The Contractor shall include this Clause in all subcontracts at any tier for work performed at the Hanford Site.

## H.17 SHUTDOWN AUTHORIZATION

(a) In the event of a specific imminent environmental, health, or safety hazard, identified by facility line management, U.S. Department of Energy (DOE) Facility Representatives, operators, or facility health and safety personnel over viewing facility operations, the individual or group identifying the specific imminent hazard situation shall immediately take actions to eliminate or mitigate the hazard. This shall be accomplished by directing the operator/implementer of the activity or process causing the imminent hazard to shutdown the activity or the facility or by initiating emergency response actions or other actions to protect the health and safety of the workers and the public and to protect DOE facilities and the environment. (DOE designated Facility Representatives provide technical oversight of operations to help line management ensure that the facilities are operated in a safe, healthful, and environmentally acceptable manner in accordance with DOE Orders and other requirements. As such, they have "Stop Work" and "Shutdown Authorization" authority.)

In the event an imminent environmental, health, or safety hazard is identified, the individual or group that identified the hazard shall coordinate with an appropriate Contractor official, who will direct as needed, broader shutdown actions or other actions, as required. Such mitigating actions shall be subsequently coordinated with the Manager, Office of River Protection, the facility/site DOE management, and the facility/site Contractor management. The shutdown direction shall be promptly confirmed in writing from the cognizant Contracting Officer.

This authority is in addition to the Section I Clause entitled, *Stop-Work Order.*

(b) In the event of a non-imminent environmental, health, or safety hazard identified by facility line managers, facility operators, health and safety personnel over viewing facility operations, or by independent oversight organizations, the individual or group identifying the potential environmental, health or safety hazard may recommend corrective action or facility shutdown. However, the recommendation must be coordinated with the Contractor management at the facility, the responsible DOE manager, and the Manager, Office of River Protection. Any written direction to shutdown operations will be issued in coordination with the Contracting Officer.

(c) After shutdown by DOE, an operation or facility may become operational only after receiving written authorization from the Manager, Office of River Protection, or his delegated authority, in coordination with the Contracting Officer.

(d) The Contractor shall provide in its purchasing system policies, practices, and procedures for flow down of appropriate requirements of this Clause to subcontractors performing work on-site at a DOE-owned or -leased facility. Such subcontracts shall provide for the right to stop work under the conditions described herein.

## H.18 PAYMENT BONDS AND PERFORMANCE BONDS

The Contractor will not be required to furnish payment bonds and performance bonds. However, the contractor shall obtain construction bonds from subcontractors as identified in DEAR 970.5244-1(4) (f) (2).

## H.19 TRAVEL RESTRICTIONS

(a) For Contractor travel expenses incurred on or after October 1, 2000, a ceiling limitation of $475,000 (Fiscal Year 2006) shall apply to all reimbursements made for Contractor travel expenses funded by the *Energy and Water Development Appropriations Act* under this Contract. Expended funds, which exceed the established ceiling, will be unallowable unless otherwise authorized by the Contracting Officer. This ceiling will be updated annually by a letter from the Contracting Officer.

(b) Some travel costs are exempt from the ceiling, examples are:

(1) Travel performed under work for others agreements;

(2) Travel of subcontractors;

(3) Travel of non-DOE users to participate in experiments at DOE user facilities;

(4) Travel costs of travel management centers;

(5) Travel costs funded by other appropriations;

(6) Relocation costs;

(7) Costs of workshops/seminars (other than travel costs), such as, rental of meeting rooms, public address equipment, speakers' fees;

(8) Registration costs of training classes;

(9) Travel expenses within the Laboratory Directed Research and Development Program; and

(10) Travel associated with recruitment.

(c) Notwithstanding any other provisions of the Contract or the source of funding, the Contractor further agrees that none of the funds obligated under the Contract may be used to reimburse employee travel costs, which exceed the rates and amounts that apply to federal employees under subchapter I of Chapter 57 of Title 5, United States Code. Costs, which exceed these rates and amounts, will be unallowable. This restriction is in addition to those prescribed elsewhere in statute or regulation.

(d) Costs incurred for lodging, meals, and incidental expenses are considered reasonable and allowable to the extent that they do not exceed the maximum per diem rates in effect at the time of travel as set forth in:

(1) Federal Travel Regulations (FTR) for travel within the 48 states;

(2) Joint Travel Regulations (JTR) for travel in Alaska, Hawaii, the Commonwealth of Puerto Rico, and territories and possessions of the United States; or

(3) Standardized Regulations (SR) for travel allowances in foreign areas.

(e) Subparagraph (c) does not incorporate the regulations cited above in their entirety. Only the coverages in the referenced regulations addressing the maximum per diem rates, the definitions of lodging, meals, and incidental expenses, and special or unusual situations are applicable to Contractor travel.

(f) Airfare costs in excess of the lowest customary standard, coach, or equivalent airfare offered during normal business hours are unallowable except when such accommodations require circuitous routing, require travel during unreasonable hours, excessively prolong travel, result in increased cost that would offset transportation savings, are not reasonably adequate for the physical or medical needs of the traveler, or are not reasonably available to meet mission requirements. However, in order for airfare costs in excess of the above standard airfare to be allowable, the applicable condition(s) set forth above must be documented and justified.

## H.20 SEPARATE BUSINESS UNIT

The work performed under this Contract by the Contractor shall be conducted by a separate corporate entity from its parent company. The separate corporate entity must be set up solely to perform this Contract and shall be totally responsible for all Contract activities.

## H.21 SEGREGATION OF COSTS

(a) Whenever the Contract contains both fixed price and cost type arrangements, the Contractor shall maintain separate accounts for each unique contract type arrangement, by task order or other suitable accounting procedure, of all incurred segregable, direct costs of work, allocable to the work effort directly related to each contract arrangement.

(b) Whenever the contract contains a provision for an incentive for a portion of the work effort under the contract, the Contractor shall maintain separate accounts, by Work Authorization Directive or other suitable accounting procedure, of all incurred segregable, direct costs of work, allocable to the work effort directly related to the incentive arrangement.

(c) The Contractor shall maintain all such accounts, required pursuant to the paragraphs above, in accordance with the Section I Clauses entitled, *Ownership of Records* and *Accounts, Records and Inspection*, but, in no case, for a period of less than three (3) years following the Government's determination of the applicable incentive fee.

## H.22 INDIRECT COST ALLOCATIONS

For the base contract period and any extension thereof, corporate home office costs/allocations may be allowable only when a directly causal and/or beneficial relationship to the U.S. Department of Energy program is demonstrated and approved by the Contracting Officer.

## H.23 EARNED VALUE MANAGEMENT SYSTEM

(a) In the performance of this contract, the Contractor shall use an earned value management system (EVMS) that is recognized as meeting the best business practice guidelines provided in ANSI/EIA-748 Standard, *Earned Value Management System*. The Contractor shall pursue and obtain DOE certification of their EVMS.

(b) The Contractor shall apply the system to the contract in a graded fashion and shall be prepared to demonstrate to the Contracting Officer that the EVMS meets the guideline referenced in paragraph (a) of this Clause. The graded approach would concentrate application of the EVMS on line-item capital projects with selected application on other mutually agreeable project type efforts. No application of EVMS to level of effort type activities will be required.

(c) The Contracting Officer may require integrated baseline reviews. The objective of the integrated baseline review is for the U.S. Department of Energy (DOE) and Contractor to jointly assess areas, such as the Contractor's planning, to ensure complete coverage of the statement of work, logical scheduling of the work activities, adequate resourcing, and identification of inherent risks. The Contractor is responsible for evaluation of its system. This includes self-evaluation of the system, conformity with the standard, and notification to the Contracting Officer of any significant system changes.

(d) The Contractor agrees to provide access to all pertinent records and data requested by the Contracting Officer or duly authorized Contracting Officer's Representative (COR). Access is to permit Government surveillance to ensure that the EVMS complies, and continues to comply, with the criteria referenced in paragraph (a) of this Clause.

(e) The Contractor shall include a Clause similar to this in appropriate subcontracts.

## H.24 FINANCIAL MANAGEMENT SYSTEM

(a) The Contractor's accounting system must have the electronic capability to generate and transmit by acceptable mode, the periodic detailed accounting information, at a minimum monthly and at year-end, to the U.S. Department of Energy (DOE) Primary Accounting System for reporting financial activity under this contract in accordance with DOE requirements.

(b) The Contractor shall maintain and administer a financial management system that (1) is suitable to provide proper accounting in accordance with Generally Accepted Accounting Principles, and Cost Accounting Standards, except as modified by DOE requirements; (2) provides accurate and reliable financial and statistical data on a timely basis; (3) ensures accountability for all assets; (4) supports financial planning and budget formulation, validation, execution, and the recasting or changing of DOE funding or task codes such as Budget and Reporting Numbers (B&R), program baseline summaries (PBS), and local projects/tasks; (5) maintains proper funding authorization; (6) provides sufficient management controls per Section I Clause entitled, *Management Controls*, and internal controls; (7) integrates and reports the financial information for subcontractors; and (8) provides all other necessary financial reports which shall include accumulating and reporting indirect and support costs by function. The Contractor will be requested, periodically, to provide certain functional cost information not normally provided to DOE on a routine basis, but should be otherwise available through query of the Contractor's accounting system.

(c) The Contractor shall submit a plan for DOE approval of any substantive change to the financial management system or subsystems at least sixty (60) days in advance of implementation. This plan must identify the cost and schedule for changing from the existing financial systems, and provide a comparison of the capabilities of the new system(s) to the existing system(s). Any new systems are subject to audit or review.

## H.25 ENGINEERING STANDARDS, DESIGN CRITERIA, AND CONSTRUCTION STANDARDS

The contractor shall develop a consistent and uniform set of Engineering Standards, Design Criteria, and Construction Standards based on the requirements of the applicable DOE Directives listed in accordance with the Section I Clause entitled, *Laws, Regulations, and DOE Directives*. This set of standards and criteria will be documented, placed under configuration control, and used uniformly across projects and programs in the design, construction, and modification of facilities, structures, systems, or major components. Where an authorization basis, agreement or document governs a facility, structure, system or major component, the criteria and standards will be considered a material part of the authorization basis, agreement or document.

## H.26 LEGAL AGREEMENTS (TRI-PARTY AGREEMENT AND OTHERS)

The U.S. Department of Energy (DOE), U.S. Environmental Protection Agency Region 10 (EPA), and Washington State Department of Ecology (Ecology) have entered into the *Hanford Federal Facility Agreement and Consent Order*, referred to as the Tri-Party Agreement (TPA) to ensure compliance with the *Resource Conservation and Recovery Act of 1976* (RCRA) and the *Comprehensive Environmental Response, Compensation, and Liability Act of 1989*, as amended (CERCLA). The TPA sets forth certain requirements and milestones for cleanup activities at the Hanford Site. The Contractor agrees to plan and perform the work under this contract in accordance with DOE direction concerning implementation of the TPA and achievement of current and future milestones in the TPA. TPA change requests will be prepared and processed as soon as possible to reconcile any discrepancies between the River Protection Project (RPP) baseline and the TPA.

Interim Stabilization Consent Decree: DOE and Ecology have entered into the Consent Decree (CT-99-5076-EFS). The Consent Decree sets forth certain requirements and milestones for risk reduction activities at RPP, such as interim stabilization of single-shell tanks and Waste Treatment and Immobilization Plant (WTP) contracting. The Contractor agrees to plan and perform the work under this contract in accordance with DOE direction concerning implementation of the Consent Decree and achievement of current and future milestones in the Consent Decree.

## H.27 ENVIRONMENTAL RESPONSIBILITY

General. Contractor is required to comply with all environmental laws, regulations, and procedures applicable to the work being performed under this contract. This includes, but is not limited to, compliance with applicable Federal, State and local laws and regulations, interagency agreements such as the *Hanford Federal Facility Agreement and Consent Order* [HFFACO, also known as the Tri-Party Agreement or TPA], consent orders, consent decrees, administrative orders, compliance agreements or schedules and settlement agreements between the DOE and Federal and State regulatory agencies. Changes to these requirements will be handled by baseline control. As stated in Section J, Appendix D, the Contractor shall generally plan and lead all required regulatory interactions, and drive agreements with the regulators. However, DOE may, in its discretion, choose to plan and lead negotiations with regulatory agencies.

(a) Environmental Permits. The Contractor is responsible to DOE for operation of the treatment, storage and/or disposal (TSD) units known as the Single Shell Tank System (SST), Double Shell Tank System (DST), 204-AR Waste Unloading Station, 242-A Evaporator, 222-S Laboratory and the Grout Treatment Facility (GTF) (collectively for this clause hereinafter "Tank Farms") in compliance with the laws, regulations, etc., as stated in the paragraph above and in accordance with the terms of the environmental permits that have been certified in writing by the Contractor, and signed by DOE as "owner/operator" and by the Contractor as "co-operator."

(b) Contractor and DOE as Joint Permittees. Where appropriate, required by law, or required by applicable regulatory agencies, DOE shall sign permits as owner or co-operator with Contractor as operator or co-operator. DOE will co-sign Hazardous Waste permit applications as owner/co-operator where required by applicable law. In this scenario, the Contractor must coordinate its actions with DOE. The Contractor shall accept assignment as "co-operator" of environmental permits, permit applications, or other related documentation associated with the TSDs described in the above paragraph (a). DOE is responsible for timely notification to the Contractor of any issues or changes in the regulatory environment that impact or may impact Contractor implementation of any permit requirement. The Contractor is responsible for timely notification to DOE of any issues or changes in the regulatory environment that impact or may impact implementation of any permit requirement.

(c) Multiple Contractors as Permittees. Where appropriate, in situations where multiple contractors are operators or co-operators of operations requiring environmental permits, DOE shall sign such permits as owner or operator and affected contractors shall sign as operator or co-operators. In this scenario, the Contractor must coordinate as appropriate with DOE and other contractors affected by the permit.

(d) Permit Applications and Closure Plans. The Contractor shall work cooperatively with DOE to jointly prepare any permit applications and Closure Plans that must be signed or co-signed by DOE. In the event the permit application or closure plan is required to be co-signed, submitted by DOE, or is related to a permit in which DOE is a permittee, the Contractor shall provide the application or closure plan for review and comment. Every effort will be made to prepare, review and submit permit applications and closure plans as defined on the Integrated Mission Execution Schedule (IMES) or current Tank Farm project schedule.

The Tank Farms are currently being operated under a *Resource Conservation and Recovery Act of 1976* (RCRA), Part A, Interim Status permit. Application for a Part B permit covering Tank Farm operations is being prepared for submission to the Washington State Department of Ecology (Ecology). Issuance of a Part B Permit during the remaining term of this Contract, may impact the Tank Farm Contractor project baseline cost and schedule for completion of the work set forth in Section C, *Statement of Work*, of this contract. In such event, the Contractor shall institute a change under the Section I Clause entitled, *Changes*.

(e) Financial Responsibility. DOE agrees that if bonds, insurance, or administrative fees are required as a condition for permits or other regulatory approvals obtained by Contractor under this Contract, such costs shall be allowable. In the event such costs are determined by DOE to be excessive or unreasonable, DOE shall provide the regulatory agency with an acceptable form of financial responsibility. Under no circumstances shall the Contractor or its parent be required to provide any corporate resources or corporate guarantees to satisfy such regulatory requirements.

(f) Copies, Technical Information. The Contractor shall provide DOE copies of environmental permits, authorizations, and regulatory approvals issued to the Contractor by the regulatory agencies within five (5) working days of receipt. DOE shall provide the Contractor copies of environmental permits, authorizations, and regulatory approvals issued by the regulatory agencies to DOE within five (5) working days of receipt.

The Contractor and DOE shall provide to the other copies of documentation, such as, letters, reports, or other such materials transmitted either to or from regulatory agencies relating to the Contract work within five (5) working days of transmittal or receipt.

The Contractor and DOE shall maintain all necessary technical information required to support applications for revision of DOE or other Hanford site Contractor environmental permits when such applications or revisions are related to Contractor's operations. Upon request, Contractor or DOE shall provide to the other access to all necessary and available technical information required to support applications for or revisions to permits or permit applications. If certifications to regulatory agencies are required, the Contractor and DOE shall provide to each other a certification statement relating to such technical information in the form required by the following paragraph.

(g) Certifications. When DOE is required to certify a document to an external agency or regulator, the Contractor shall provide a written certification statement as required by the applicable regulations of the agency or regulator to which the document shall be submitted. Should the applicable regulations not provide certification requirements, the Contractor shall include the following certification statement in the submittal of such materials to DOE:

> "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

The individual(s) authorized in writing by the Contractor to sign such certification statements submitted to Federal or State regulatory agencies under the applicable regulatory program shall sign the certification statement.

(h) Fines, Penalties, Allowable Costs. The Contractor shall accept, in its own name, service of proposed notices, or notices of, correction, penalty, fine, violation, administrative orders, citation, or notice of alleged violations, (e.g., NOC, NOP, NOF, PNOV, NOV, NOAV) and any similar type notices issued by Federal or State regulators to the Contractor resulting from or relating to Contractor's performance of work under this contract, without regard to liability. The Contractor shall immediately notify DOE of such receipt and shall provide copies or originals of such documents as soon as possible thereafter. The allowability of the costs associated with fines and provisions of this contract and applicable law shall govern penalties.

Liability and responsibility for civil fines or penalties arising from or related to violations of environmental requirements shall be borne by the party that caused, by its acts or failure to act, the violation irrespective of the fact that the cognizant regulatory authority may assess any such fine or penalty upon either party or both parties without regard to the allocation of responsibility or liability under this Contract. This contractual allocation shall be based upon the degree to which a party's negligence or willful misconduct led or contributed to the imposition of the civil fine or penalty. This contractual allocation of liability for any such fine or penalty is effective regardless of which party signs permit applications, manifests, reports or other required documents, is a permittee, or is the named subject of an enforcement action or assessment of a fine or penalty. Nothing in subsection (h) shall be interpreted to limit or otherwise alter the obligation of the DOE to reimburse the Contractor in accordance with the Section I Clause entitled, *Pre-existing Conditions*, of this Contract.

(i) Discussions/interactions. DOE may, in its discretion, choose to be plan and lead negotiations with regulatory agencies. Upon receiving DOE concurrence, Contractor may plan and lead negotiations with regulatory agencies consistent with objectives in Section J, Appendix D. The Contractor shall not make any commitments or offers to regulators purporting to bind or binding the Government in any form or fashion, including monetary obligations, without receiving written or verbal authorization or concurrence from the Contracting Officer or his/her authorized representative prior to making such offers/commitments. Contractor may make non-obligatory commitments with regulatory agencies such as agreeing to meet on a weekly basis. Failure to obtain such advance written approval may result in otherwise allowable costs being declared unallowable and/or the Contractor being liable for any excess costs to the Government associated with or resulting from such offers/commitments. In the event DOE chooses to allow the Contractor to conduct such negotiations without direct DOE participation, the Contractor shall keep DOE fully advised as to the progress of such negotiations. It is recognized that the challenges posed by this contract, require that the Contractor actively participate with DOE in setting the long-term strategy for the Tank Farm work activities and to plan and lead interactions with the regulators affecting the work scope of this contract. Contractor personnel will work closely with DOE staff to assure that the proper preparations are made for meetings with the regulators and that strategies are developed and implemented that allow the Hanford Waste Treatment Complex to succeed at meeting regulatory and programmatic obligations for the least cost. DOE specifically recognizes that generally it is preferable for the Contractor to take the lead in discussions and/or interactions with the regulators, in particular where it is necessary to obtain regulatory relief to insure that work scope and the Baseline are in compliance with Federal, State, and local regulatory requirements.

(j) Termination, Expiration, Permit Transfer. In the event of expiration or termination of this contract, DOE will require the Contractor on an allowable cost basis to take all necessary steps to transfer to DOE all environmental permits held by the Contractor. DOE and/or the successor Contractor will assume responsibility for such permits, with the approval of the regulating agency, and the Contractor shall be relieved of all liability and responsibility to the extent that such liability and responsibility results from the acts or omissions of a successor Contractor, DOE, or their agents, representatives, or assigns. The Contractor shall remain liable for all unresolved costs; claims, demands, fines and penalties, including reasonable legal costs arising prior to the date such permits are transferred to another party. Contractor shall not be liable for any such claims occurring after formal transfer of this contract unless said claims result from Contractor's action or inaction.

(k) Miscellaneous. The Contractor shall accept as co-operator assignment or transfer of permits held by DOE associated with the Tank Farm mission as described in the Contract. In the case of permit applications that are co-signed by DOE with the Contractor, DOE may sign the application through the Manager of the Richland Operations Office, or the Manager of the Office of River Protection, or both (or the Managers' authorized designees), as determined by DOE in its sole discretion.

## H.28 CONTRACTOR DELIVERABLES FOR EXTERNAL REGULATORS OR AGENCIES

Unless otherwise specified and as agreed to by both DOE and the Contractor, all Contractor deliverables for external regulators or agencies will be provided to DOE at least one (1) month prior to the date it is due to the external regulator or agency. DOE will provide review, approval, and/or rejection of the submittal within fifteen (15) working days of delivery. This provision does not modify the requirements provided in Section H Clause entitled, *Permit Applications*.

## H.29 HAZARDOUS MATERIALS

In implementation of the Section I Clause entitled, *Hazardous Material Identification and Material Safety Data*, the Contractor shall obtain, review and maintain a Material Safety Data Sheet (MSDS) in a readily accessible manner for each hazardous material (or mixture containing a hazardous material) ordered, delivered, stored, or used; and maintain an accurate inventory and history of use of hazardous materials at each use and storage location. After Contract award, the Offeror shall submit the information required by paragraph (b) of the Section I Clause referenced above. The MSDS shall conform to the requirements of 29 Code of Federal Regulations Part 1910.1200 (g). The MSDS shall be readily accessible during each work shift to employees when they are in their work areas.

## H.30 PRESERVATION OF ANTIQUITIES AND LAND AREAS

Federal law provides for the protection of antiquities located on land owned or controlled by the U.S. Department of Energy (DOE). Antiquities include Indian graves or campsites, relics, and artifacts. The Contractor shall control the movements of its personnel and its subcontractors' personnel at the job site and provide appropriate training to ensure that any existing antiquities discovered thereon will not be disturbed or destroyed by such personnel. It shall be the duty of the Contractor to report to the Contracting Officer the existence of any antiquities so discovered. The Contractor shall also preserve all vegetation except where such vegetation must be removed for survey or construction purposes. Any removal of vegetation shall be in accordance with the terms of applicable habitat mitigation plans and permits.

## H.31 QUALITY ASSURANCE SYSTEM

The Contractor shall develop and implement a company specific Quality Assurance Program (QAP), supported by documentation that describes its overall implementation of Quality Assurance (QA) requirements. The documentation shall identify the procedures, instructions, and manuals that will be used to implement the Contractor's QA Program within the Contractor's scope of work.

The Contractor shall utilize a technically defensible "graded approach" to develop the Contractor's QA Program. For nuclear facilities and projects, the Contractor shall base its approach on the requirements of 10 Code of Federal Regulations (CFR) Part 830, Subpart A, DOE O 414.1C Quality Assurance, and the joint RL/ORP guidance provided in 03-ABD-0047. For those elements of the Contractors work scope that involve interim storage and on-site transportation of Immobilized High Level Waste, the Contractor shall base its graded approach on the Office of Civilian Radioactive Waste Management (OCRWM) Quality Assurance Requirements and Description (QARD), DOE/RW-0333P Revision 18.

## H.32 SUBCONTRACTOR ENVIRONMENT, SAFETY, QUALITY, AND HEALTH REQUIREMENTS

The U.S. Department of Energy (DOE) and the Contractor are committed to zero accidents on the Hanford Waste Treatment Complex (HWTC). To that end, unless expressly approved by the Contracting Officer's Representative or the Head of Contracting Activity (HCA), the Contractor is required to evaluate, prior to subcontracting whether the subcontractor has an acceptable Environmental, Safety, Quality, and Health (ESQ&H) program and that satisfies the following minimum requirements:

(a) An ESQ&H program that is compliant with applicable local, State, Federal and DOE regulatory requirements;

(b) Employees are properly trained and equipped to perform their assigned work. The subcontractor has established an orientation program for new hires, which includes ESQ&H;

(c) Policies and procedures are in place to eliminate accidents, injuries/illnesses, and damage to property and equipment;

(d) ESQ&H records are adequately and properly maintained;

(e) Accidents/incidents are investigated promptly and required reports are generated. If the investigation discovers inadequacies in either the work process or the policies and procedures, the appropriate processes are put in place to avert the accident/incident in the future and personnel are provided proper training;

(f) Hazards are identified and appropriate measures are taken to ensure that personnel and equipment are adequately protected as a result of identified hazards;

(g) Employees have the right to report unsafe conditions and to interrupt or stop work without fear of reprisal;

(h) The frequency of ESQ&H meetings with employees to discuss the work to be performed and the hazards associated with the work is based on the scope of work and commensurate with the work hazards;

(i) ESQ&H inspections/audits are conducted to evaluate effectiveness of the program;

(j) The subcontractor has an average Experience Modification Rate (EMR), Occupational Safety and Health Administration (OSHA) Recordable, and Lost Workday case rate(s) of (1.0, 3.2, and 0.64), respectively, or less, for the previous three (3) years and shows an improving trend in safety performance; however, for construction subcontractors the values shall be less than 1.0, 3.2, and 3.0.

(k) The subcontractor has an established written Hazard Communication Program and a system within the program to maintain Material Safety Data Sheets (MSDS);

(l) The subcontractor has had no significant willful citations from OSHA or other regulatory organizations during the previous three (3) years;

(m) The subcontractor has received no fines for Nuclear Regulatory Commission non-compliances during the previous three (3) years.

The Contractor shall flow down all applicable ESQ&H program criteria to the lowest tier subcontractor performing construction, equipment fabrication or commissioning.

## H.33 LABOR RELATIONS

(a) The Contractor, and its major subcontractors, will respect the rights of employees, (1) to organize, form, join, or assist labor organizations; bargain collectively through representatives of the employees own choosing; and engage in other protected concerted activities for the purpose of collective bargaining, or (2) to refrain from such activities.

(b) To the extent required by law, the Contractor and its major subcontractors shall give notice to any lawfully designated representative of its employees for purposes of collective bargaining and, upon proper request, bargain to good faith impasse or agreement, or otherwise satisfy applicable bargaining obligations.

(c) The Contractor shall promptly advise the Contracting Officer of, and provide all appropriate documentation regarding, any labor relations developments at the prime or subcontract level that involve or appear likely to involve:

(1) Possible strike situations affecting the facility;

(2) Referral to the Energy Labor-Management Relations Panel;

(3) Referral to the National Labor Relations Board at any level;

(4) Recourse to procedures under the *Labor-Management Act of 1947*, as amended, or any other Federal or state labor law; and

(5) Any grievance that may reasonably be assumed to be arbitrated under a Collective Bargaining Agreement.

Cost of wages and fringe benefits, to employees represented by collective bargaining units, not in excess of those in appropriate collective bargaining agreements including the Hanford Site Stabilization Agreement, shall be allowable. The costs associated with grievance processing and settlements, arbitration, and arbitration awards shall be allowable in accordance with the provisions of the Contract Section I Clause entitled, *Insurance – Litigation and Claims*.

## H.34 ADVANCE UNDERSTANDING ON PERSONNEL COSTS, POLICIES AND PROCEDURES

The U.S. Department of Energy (DOE) has reached an advance understanding with the Contractor on certain personnel costs, related expenses, policies, and procedures. These costs are those associated with personnel policies and procedures, which the Contractor will apply to work under this Contract. The Contractor agrees to negotiate in good faith changes to this Advance Understanding upon notification by the Contracting Officer.

Advance review by DOE and written approval by the Contracting Officer of such personnel policies and procedures is required. Any exceptions noted in the Contracting Officer's written approval will govern the Contractor's application of the personnel policies and procedures under this contract. Any deviation from the personnel policies and procedures so approved must have DOE approval before costs occasioned thereby will be considered allowable (either direct or indirect) under the subject contract. In addition, DOE approval will be required for total annual compensation paid to each person designated as Key Personnel and identified in the Section I Clause entitled, *Key Personnel*, exclusive of bonus or incentive compensation pay which will not be an allowable cost under this contract. The Advance Understanding will be part of this Contract and included in Section J, *List of Documents, Exhibits, and Other Attachments*.

## H.35 DETERMINATION OF APPROPRIATE LABOR STANDARDS

The U.S. Department of Energy (DOE) shall determine the appropriate labor standards in accordance with the *Davis-Bacon Act*, which shall apply to work performed under this contract. Where requested by DOE, the Contractor shall provide such information in the form and timeframe required by DOE, as may be necessary for DOE to make such labor standards determinations. The Contractor will then be responsible for ensuring that the appropriate labor standards provisions are included in subcontracts.

## H.36 WORKFORCE RESTRUCTURING

When the Contractor determines that a reduction of force is necessary, the Contractor shall notify the Contracting Officer and seek approval, if required under applicable DOE guidance. The Contractor shall provide such information as directed by the Contracting Officer in support of the reduction of force effort and to enable compliance with Section 3161 of the *National Defense Authorization Act for Fiscal Year 1993* and any other DOE guidance pertaining to employees who may be eligible for provisions of the Act. The Contractor shall comply with the Hanford Site Workforce Restructuring Plan, as amended from time-to-time and shall supply workforce restructuring-related information and reports as needed by DOE. The Contractor shall extend displaced employees hiring preference in accordance with Section I Clause entitled, DEAR 952.226-74, *Displaced Employee Hiring Preference (June 1997)*

## H.37 IMPLEMENTATION OF THE HANFORD SITE STABILIZATION AGREEMENT

(a) The Site Stabilization Agreement for all construction work for the U.S. Department of Energy (DOE) at the Hanford Site, consists of a Basic Agreement dated September 10, 1984, plus an Appendix A. (The Site Stabilization Agreement is available in the DOE Public Reading Room. The Site Stabilization Agreement will be made a part of this Contract by reference upon award. The Contractor shall be required to comply with the most current Site Stabilization Agreement, and as modified throughout performance of the Contract.)

(b) This Clause applies to employees performing work under U.S. Department of Energy Office of River Protection (DOE-ORP) contracts or subcontracts subject to the *Davis-Bacon Act*, in the classifications set forth in the Site Stabilization Agreement for work performed at the Hanford Site.

(c) Contractors and subcontractors at all tiers who are parties to an agreement(s) for construction work with a Local Union having jurisdiction over DOE-ORP construction work performed at the Hanford Site, or who are parties to a national labor agreement for such construction work, shall become signatory to the Site Stabilization Agreement and shall abide by all of its provisions, including Appendix A. Subcontractors at all tiers who have subcontracts with a signatory contractor or subcontractor shall become signatory to the Site Stabilization Agreement and shall abide by all of its provisions, including its Appendix A.

(d) Contractors and subcontractors at all tiers who are not signatory to the Site Stabilization Agreement and who are not required under paragraph (c) above to become signatory to the Site Stabilization Agreement, shall pay not less and no more than the wages, fringe benefits, and other employee compensation set forth in Appendix A and shall adhere, except as otherwise directed by the Contracting Officer, to the following provisions of the Site Stabilization Agreement:

(1) Article VII, Employment, Section 2 only

(2) Article XII, Non-Signatory Contractor Requirements

(3) Article XIII, Hours of Work, Shifts, and Overtime

(4) Article XIV, Holidays

(5) Article XV, Wage Scales and Fringe Benefits, Sections 1 and 2 only

(6) Article XVII, Payment of Wages - Checking In and Out, Section 3 only

(7) Article XX, General Working Conditions

(8) Article XXI, Safety and Health

(e) The Contractor agrees to make no contributions in connection with this Contract to industry Promotion funds, or similar funds, except with the prior approval of the Contracting Officer.

(f) The obligation of the Contractor and its subcontractors to pay fringe benefits shall be discharged by making payments required by this Contract in accordance with the provisions of the amendments to the *Davis-Bacon Act* contained in the Act of July 2, 1964 (Public Law 88-349-78, Statutes 238-239), and the U.S. Department of Labor regulations in implementation thereof (29 Code of Federal Regulations (CFR) Parts 1, 3, 5).

(g) The Contracting Officer may direct the Contractor to pay amounts for wages, fringe benefits, and other employee compensation if the Site Stabilization Agreement, including its Appendix A, is modified by the involved parties.

(h) (1) In the event of failure to comply with paragraphs (c), (d), (e), (f), and (g) above, or failure to perform any of the obligations imposed upon the Contractor and its subcontractors, the Contracting Officer may withhold any payments due to the Contractor and may terminate the Contract for default.

(2) The rights and remedies of the Government provided in this paragraph (1) above shall not be exclusive and are in addition to any other rights and remedies of the Government provided by law or under this Contract.

(i) The requirements of this paragraph are in addition to, and shall not relieve the Contractor of any obligation imposed by other clauses of the Contract, including those entitled, *Davis*

*Bacon Act, Contract Work Hours and Safety Standards Act-Overtime Compensation, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds,* and *Contract Termination-Debarment.*

(j) The Contractor agrees to maintain its bid or proposal records showing rates and amounts used for computing wages and other compensation, and its payroll and personnel records during the course of work subject to this paragraph, and to preserve such records for a period of three (3) years thereafter, for all employees performing such work. Such records will contain the name, address, social security number of each such employee, correct classification, rate of pay, daily and weekly number of hours worked, and dates and hours of the day within which work was performed, deductions made, and amounts for wages and other compensation covered by paragraphs (c), (d), (e), (f), and (g) of this Contract Clause. The Contractor agrees to make these records available for inspection by the Contracting Officer and will permit employee interviews during working hours on the job.

(k) The Contractor agrees to insert this Clause, including this paragraph (k), in all subcontracts for the performance of work subject to the *Davis-Bacon Act.*

**H.38 WORKERS COMPENSATION**

Pursuant to State of Washington Revised Code (RCW) Title 51, the DOE Richland Operations Office (RL) is a group self-insurer for purposes of workers' compensation coverage. The coverage afforded by the workers' compensation statutes shall, for performance of work under this Contract at the Hanford Site, be subject to the following:

a) Under the terms of a Memorandum of Understanding with the Washington State Department of Labor and Industries (L&I), DOE has agreed to perform all functions required by self-insurers in the State of Washington. The Contractor is not required to pay for Workers' Compensation coverage or benefits except as otherwise provided below or as directed by the Contracting Officer.

b) The Contractor shall take such action, and only such action, as DOE requests in connection with any accident reports, including assistance in the investigation and disposition of any claim there under and, subject to the direction and control of DOE, the conduct of litigation in the Contractor's own name in connection therewith.

c) Under RCW Title 51.32.073, DOE is the self-insurer and is responsible for making quarterly payments to the L&I. In support of this arrangement, the Contractor is responsible for withholding appropriate employee contributions and forwarding on a timely basis these contributions plus the employer-matching amount to DOE.

d) The workers' compensation program shall operate in partnership with Contractor employee benefits, risk management, and environmental, safety, and health management programs. The Contractor shall cooperate with DOE for the management and administration of the DOE-RL self-insurance program that provides workers' compensation benefit coverage to Contractor employees under this Contract.

e) The contractor shall be responsible for all predecessor contractor claims that fall under DOE's self-insurance. The Contractor shall maintain and retain all claim information for information and reporting needs.

f) The Contractor must certify to the accuracy of the payroll record used by DOE in establishing the self-insurance claims reserves, and cooperate with any state audit.

g) The Contractor shall provide statutory workers' compensation coverage for staff members performing work under this Contract outside of the State of Washington and not otherwise covered by the State of Washington workers' compensation laws.

h) Time-loss compensation will be paid to injured workers in accordance with the Revised Code of Washington (RCW) § 51.08.178 and other applicable requirements. Compensations paid to workers in excess of the amounts required by statute are unallowable costs under this contract, unless such compensation is otherwise required by an existing Hanford Site labor agreement.

i) Subcontractors performing work under this Contract on behalf of the Contractor are not covered by the provision of the MOU between DOE and the State of Washington. The Contractor shall flow-down to its subcontractors the requirement to provide statutory workers' compensation coverage for the subcontractor's employees. The Contractor shall have no responsibility for subcontractor workers' compensation when it includes this requirement in the subcontract.

j) The Contractor will ensure all employees' and subcontractor employees receive training and have a clear understanding of the workers' compensation process.

k) Upon request, the Contractor shall submit to DOE, or other party as designated by DOE, payroll records as required by Washington State Workers' Compensation laws.

l) Upon request, the Contractor shall submit to DOE, or other party as designated by DOE, the accident reports required by RCW Title 51, Section 51.28.010, or any other documentation requested by DOE pursuant to the Washington State Workers' Compensation laws.

m) The Contractor shall submit to the Contracting Officer, an evaluation and analysis (at least yearly) of workers' compensation cost as a percent of payroll compared with the percentage of payroll cost reported by a nationally recognized Cost of Risk Survey that has been pre-approved by DOE (once DOE has provided the Contractor with the necessary data to perform the analysis required in this paragraph).

n) Contractor shall develop and maintain a website that is available to employees with workers' compensation information.

o) Employees shall receive additional information on the workers' compensation process when a claim is filed. This information should include but is not limited to; company contacts, approval needed for appointments, time off, etc.

p) Submission of ad hoc reports and other information as may be required by DOE.

q) Briefings to DOE as requested.

**H.39 INFORMATION**

(a) Release of Information

(1) The Contractor shall be responsible for developing, planning, and coordinating proactive approaches to timely dissemination of information regarding U.S. Department of Energy (DOE) unclassified activities onsite and offsite as directed by the Contracting Officer.

(2) The Contractor shall be responsible for following DOE guidelines and/or procedures for all oral, written and audio/visual information material prepared for public use, including technical information.

(b) Unclassified, Controlled, Nuclear Information (UCNI): Documents originated by the Contractor or furnished by the Government to the Contractor, in connection with this contract, may contain Unclassified, Controlled, and Nuclear Information as determined pursuant to Section 148 of the *Atomic Energy Act of 1954*, as amended. The Contractor shall be responsible for protecting such information from unauthorized dissemination in accordance with DOE regulations and directives, and Section I Clauses entitled, *Security* and *Classification/Declassification*.

(c) Confidentiality of Information: To the extent that the work under this contract requires that the Contractor be given access to confidential or proprietary business, technical, or financial information belonging to the Government or other companies, the Contractor shall, after receipt thereof, treat such information as confidential and agrees not to appropriate such information to its own use or to disclose such information to third parties unless specifically authorized by the Contracting Officer in writing. The foregoing obligations, however, shall not apply to:

(1) Information which, at the time of receipt by the Contractor, is in the public domain;

(2) Information that is published after receipt thereof by the Contractor or otherwise becomes part of the public domain through no fault of the Contractor;

(3) Information that the Contractor can demonstrate was in its possession at the time of receipt thereof and was not acquired directly or indirectly from the Government or other companies;

(4) Information that the Contractor can demonstrate was received by it from a third party that did not require the Contractor to hold it in confidence.

The Contractor shall obtain the written agreement, in a form satisfactory to the Contracting Officer, of each employee permitted access to such information, whereby the employee agrees that he will not discuss, divulge or disclose any such information or data to any person or entity except those persons within the Contractor's organization directly concerned with the performance of the contract.

The Contractor agrees, if requested by the Government, to sign an agreement identical, in all material respects, to the provisions of this subparagraph (d), with each company supplying information to the Contractor under this contract, and to supply a copy of such agreement to the Contracting Officer. From time to time upon request of the Contracting Officer, the Contractor shall supply the Government with reports itemizing information received as confidential or proprietary and setting forth the company or companies from which the Contractor received such information.

The Contractor agrees that upon request by DOE, it will execute a DOE-approved agreement with any party whose facilities or proprietary data it is given access to or is furnished, restricting use and disclosure of the data or the information obtained from the facilities. Upon request by DOE, Contractor personnel shall also sign such an agreement.

(d) The Government reserves the right to require the Contractor to include this Clause or a modified version of this Clause in any subcontract as directed in writing by the Contracting Officer.

**H.40 LOBBYING RESTRICTIONS (*ENERGY AND WATER DEVELOPMENT APPROPRIATIONS ACT, 2001*)**

The Contractor or awardee agrees that none of the funds obligated on this award shall be expended, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before Congress, other than to communicate to Members of Congress as described in 18 United States Code 1913. This restriction is in addition to those prescribed elsewhere in statute and regulation.

**H.41 LOBBYING RESTRICTIONS (*DEPARTMENT OF INTERIOR AND RELATED AGENCIES APPROPRIATIONS ACT, 2001*)**

The Contractor agrees that none of the funds obligated on this award shall be made available for any activity of the publication or distribution of literature that in any way tends to promote public support or opposition to any legislative proposal on which Congressional action is not complete. This restriction is in addition to those prescribed elsewhere in statute and regulation.

**H.42 ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION PROGRAM ACT (EEOICPA)**

The Contractor shall provide support of the EEOICPA established under Title XXXVI of the *National Defense Authorization Act of 2001* (Public Law 106-398). The Contractor shall provide records in accordance with DEAR Clause 970.5204-3 entitled, *Access to and Ownership of Records* in support of EEOICPA claims and the claim process under the EEOICPA.

a) The Contractor shall provide support services as required to verify employment and other records, which provide pertinent information for compensation under the EEOICPA. The Contractor shall provide this support for itself and any named subcontractors' employees. In addition, the Contractor shall provide reports as directed by DOE.

b) The Contractor shall provide an EEOICPA point of contact; this employee must attend meetings as requested by DOE.

c) The Contractor shall agree to the promulgation of new clauses or amendments of the Contractor Human Resource Management Programs that are currently found in DOE Order 350.1, Change 1. Subsequent to such promulgation, the Contractor shall agree to incorporate all required clauses and negotiate the cost and resource impacts needed to implement these clauses. All communications with out side agencies in relation to EEOICPA will be coordinated through DOE

d) The Federal Compensation Program Act (FCPA) electronic reporting system will be provided to the Contractor.

e) The Contractor shall provide the support necessary to accomplish the following DOE EEOICPA activities, for the Contractor and any named subcontractors;

   a. Locate, retrieve and copy (2 copies) personnel and other program records as requested;

   b. Perform records research needed to complete the U.S. Department of Labor (DOL) claims or to locate records needed to complete the claim;

   c. Perform/coordinate records declassification activities required for the processing of claims forms;

   d. Keep FCPA information current on EEOICPA claims activities.

e. Ensure all EEOICPA claims received are completed and returned to DOE within 45 calendar days of date entered in the FCPA by DOE.

**H.43 USE OF DOE FACILITIES**

The Contractor may conduct programs of local community assistance to mitigate adverse impacts of closure or reconfiguration of U.S. Department of Energy (DOE) facilities. Such programs may provide for the lease or transfer of DOE property at less than fair market value in accordance with the *Hall Amendment* (Public Law 103-160, Section 3154 and 3155). Any lease or transfer of DOE property must be prior-approved in writing by the Contracting Officer.

**H.44 RESERVED**

**H.45 RESERVED**

**H.46 RESERVED**

**H.47 NON-COMMERCIAL AVIATION ACTIVITIES AND SERVICES**

As required to perform the Statement of Work described in Section C of this Contract, the Contractor may purchase non-commercial aviation services for aerial photography. Such aerial photography services shall be obtained only from the U.S. Department of Energy (DOE) Hanford Contractor approved to provide aviation services for the Hanford Site. The DOE Contracting Officer and the Hanford Aviation Manager/Safety Officer must approve all other non-commercial aviation or aviation-related services in advance.

**H.48 FEE REDUCTION FOR CHANGES IN KEY PERSONNEL**

Key personnel are considered to be essential to the work being performed on this Contract. Prior to implementing a CH2M HILL Hanford Group, Inc. decision to reassign any Key Person to a non CH2M HILL Hanford Group, Inc. position or substituting any of the specified Key individuals, or proposing them as a key person under another contract, the Contractor shall notify the Contracting Officer not less than thirty (30) days in advance and shall submit justification (including proposed substitutions) in sufficient detail to permit evaluation of the impact on the work being performed under this Contract.

It is recognized that Key Personnel may choose to retire or accept other positions. This clause only applies to a CH2M HILL Hanford Group, Inc. decision to reassign any Key Person to a non CH2M HILL Hanford Group, Inc. position.

Unless approved in writing by the Contracting Officer, no key personnel position will remain unfilled by a permanent replacement for more than 60 days. The key personnel list shall be amended during the course of the Contract to add or delete key personnel as appropriate and approved by the Contracting Officer.

Anytime the overall Tank Farm Contract Project Manager is replaced or removed for any reason under the Contractor's control within two (2) years of being placed in the position, fee will be reduced by $50,000. In addition, each time any of the other Key Personnel proposed are replaced or removed for any reason under the Contractor's control within two (2) years of being placed in the position, fee will be reduced by $15,000 for each removed or replaced individual.

The Contractor may request, in writing, that the Contracting Officer waive all or part of a fee reduction if special circumstances exist. The Contracting Officer shall have sole unilateral discretion to waive or not waive all or part of a reduction.

The key personnel for this contract are listed in Section J, Appendix A.