IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CH2M HILL HANFORD GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-494C |
| | ) | |
| THE UNITED STATES, | ) | (Chief Judge Damich) |
| | ) | |
| Defendant. | ) | |

JOINT RESPONSE TO ORDER FOR SUPPLEMENTAL INFORMATION

Pursuant to the Court's order, dated February 21, 2008, plaintiff, CH2M Hill Hanford Group, Inc. (CH2M HILL), and defendant, the United States, respectfully submit separate responses to the five sets of questions contained in the Court's order.

I. COURT'S FIRST SET OF QUESTIONS

**1. Paragraph 22 of Plaintiff's complaint in the Funding Claim states that "[f]rom whatever funding is provided by [the United States Department of Energy ("DOE")], approximately $230,000,000 annually must be used by [Plaintiff] for work necessary to maintain safe, environmentally sound site operations." Does the phrase "work necessary to maintain safe, environmentally sound site operations" encompass all non-fee bearing work the Applicable Contract contemplated? Please cite to a specific provision in the Applicable Contract that specifies this allocation of funds or indicate the source of this figure.**

A. Response Of CH2M Hill:

In drafting its Complaint, CH2M HILL intended the quoted phrase to be a substitute for the phrase "non-fee bearing work."[1]

The approximate annual cost of non-fee bearing work, i.e., the figure of $230,000,000 cited in ¶ 22 of the Complaint, is not specified in the Contract. Contract Section C.2 requires the development of the "Baseline." See Docket Entry 31-1, page 55 of 75. Contract § C.2(a)(2) states, in part:

> Complete and maintain an integrated life-cycle baseline which reflects: (a) technical scope of work specified in this Contract, (b) project/program schedules with critical paths identified, and (c) a validated cost profile based on a resource-loaded schedule. . . . The Baseline shall be the basis for budget development, input to risk analysis, and prioritization of work.

See Docket Entry 31-1, page 10-11 of 75. The figure of

---

[1] Defendant argues below that "all work required by the contract is 'fee bearing'." For clarification, the term fee-bearing work, as used by CH2M HILL, refers work to activities that are incentivized under this Cost-Plus-Incentive-Fee Contract. Contract § H.1(h) expressly provides that the entire fee pool is allocated to specific cleanup milestones identified in the Performance Based Incentives ("PBIs"). Docket Entry 31-11, page 27 of 34. This is further demonstrated by the fact that the total of the fee available for the four PBIs added by Modification 64 equals the total fee available at that point in time. Compare Docket Entry 31-10, pages 3, 5, 9 and 14 of 16 with the $72 million fee total cited in the Defendant's response below. Work that is necessary to maintain the Hanford Site but which does not further "completion of mission scope," i.e., the ultimate cleanup of the Site, is "non-fee bearing work." See Contract § H.1(a) at Docket Entry 31-11, page 25 of 34.

$230,000,000 for non-fee bearing work can be derived from the Baseline, specifically from the "validated cost profile based on a resource-loaded schedule" referred to in the above quotation.[2]

In the remaining paragraphs of this section, CH2M HILL responds to assertions of Defendant which, while not necessarily relevant to the Court's inquiry, cannot be left uncorrected.

Defendant asserts below that "if CH2M Hill is inefficient, CH2M Hill will accomplish fewer tasks than the agency expected CH2M Hill to accomplish (at contract award) for the same amount of dollars over the contract period." Likewise, if the agency changes the Contract but does not equitably adjust the Contract, CH2M Hill will accomplish fewer tasks than the agency expected CH2M Hill to accomplish (at contract award) for the same amount of dollars over the contract period. Defendant then asserts that "the agency will have no recourse because CH2M Hill is not obligated to accomplish any finite set of tasks." This is not correct; among other forms of recourse, the agency can deduct fee

---

[2] Defendant asserts below that "both parties understood that the technological and management challenges were significant, and thus projecting the exact amount of progress that would be accomplished during the term of the contract could not be accomplished with certainty." This is exactly the reason that Contract required development of an approved Baseline, i.e., so that the parties would be on the "same page" (so to speak) regarding the exact amount of progress that the parties expected to accomplish during the term of the contract barring changes and unforeseen events.

and terminate the Contract.

Defendant makes certain arguments below based on the fee pool discussed in Modification M030. That entire discussion is irrelevant because the entire package of incentives as well as the amount and allocation of the fee pool were revised by Modification M064. See Docket Entry 31-10, page 2 of 16 (all previous PBIs cancelled). More importantly, Defendant's arguments appear to be based on a different definition of "fee-bearing" than intended by CH2M HILL. See footnote 1 above. Indeed, Defendant's assertion that all work was fee-bearing appears to understand the Contract as a Cost-Plus-Percentage-of-Cost vehicle. That obviously could not have been the parties' intention, since such contracts are illegal.

Further, Defendant argues that "The Incentive Fee Provision Was Not Derived From the Baseline." CH2M HILL makes no claim to the contrary. Rather, the Baseline is the contractor-prepared, DOE-approved, cost and resource-loaded schedule reflecting the parties' understanding at any given time of the amount of progress that will be accomplished during the term of the Contract.

B. Response Of The United States:

We have three responses:

1. we agree with CH2M Hill that "the figure of $230,000,000 cited in ¶ 22 of the Complaint, is not specified in the Contract;"

2. all work required by the contract is "fee bearing;" and

3. the incentive fee provision was not derived from the baseline; instead, the baseline was drafted by CH2M Hill in an effort to schedule the achievement of goals over a period of several decades, including the achievement of certain incentive fee goals during the contract performance period.

1. The Amount Of $230,000,000 Is Not In The Contract

We agree with CH2M that the amount of $230,000,000 is not found in the contract. Indeed, the concept of two separate categories of work: fee-bearing and non-fee-bearing, is a litigation posture adopted by CH2M Hill that is inconsistent with the contract.

2. All Contract Work Is Fee-Bearing

All work performed under the contract is fee-bearing. In order to explain why this is so, a certain amount of background information is helpful. In general, the answer is that all work is fee-bearing because the total estimated price of the contract is used to establish the size of the fee pool available to pay fee. A brief description of the type of contract, and the

relevant regulations for establishing the fee pool for such types of contracts, explains this concept in more detail.

The contract in this case was awarded in connection with a long-term project to clean up a very large number of tanks and other areas at the Hanford site. This clean-up project is subject to the "Hanford Federal Facility Agreement and Consent Order," Complaint, ¶ 19, which is often referred to as the "tri-party agreement." The requirements and timetables imposed by the tri-party agreement often shift somewhat from year to year, to the extent that the parties can agree to such changes, in light of experience and the most recent strategies for making progress. At the moment, the project is expected to be completed in 2042. This end-date has fluctuated in recent years, and may change again in the future.

When the contract was awarded, both parties understood that all of the work needed to complete the clean-up would not occur during the period of contract performance. Furthermore, both parties understood that the technological and management challenges were significant, and thus projecting the exact amount of progress that would be accomplished during the term of the contract could not be accomplished with certainty. In light of these circumstances, and pursuant to regulations and other guidance, the contracting officer selected a cost-reimbursement

form of contract instead of a fixed-price contract.

As the Court knows, a fixed-price contract identifies specific tasks to be completed, and provides a single price for that collection of tasks. The contractor bears the risk that costs may exceed the price. In contrast, CH2M Hill is protected from such risk because a cost-reimbursement form of contract was selected. All reasonable and allowable costs incurred by CH2M Hill are reimbursed. The agency's liability to CH2M Hill is capped by the limitation of funds clause, but otherwise the agency is responsible for paying CH2M Hill's costs, whether CH2M Hill is efficient or not.

Thus, if CH2M Hill is inefficient, CH2M Hill will accomplish fewer tasks than the agency expected CH2M Hill to accomplish (at contract award) for the same amount of dollars over the contract period, and the agency will have no recourse because CH2M Hill is not obligated to accomplish any finite set of tasks. Unlike a fixed-fee contract, this contract places no financial risk on CH2M Hill for unexpectedly high costs, or for a failure to accomplish the expected tasks.

The fee provisions for this contract were established in accordance with regulations concerning fee for such cost-reimbursement contracts. See 48 C.F.R. §§ 15.404-4(d), 915.404-4-70, 915.404-4-72, 970.1504-1. In general, this is a two-step

process. First, the size of the "fee pool" (amounts available to be paid as fee) is established. Second, the criteria for paying fee are established.

In this case, a fee pool of $106 million was established by contract modification 30. This fee pool was for six fiscal years: FY2001-06. The size of the fee pool was calculated by estimating the amount to be spent for all contract work (minus some relatively small categories of funding controlled by DOE) during the six year period, and then applying various factors to that sum in accordance with regulations, guidance documents, and the contracting officer's judgment.

In FY2001 and FY2002, a set of fee criteria different from the fee criteria at issue in this case was in place. Ultimately, CH2M was paid approximately $20 million for FY2001 and approximately $16 million for FY2002. At the start of FY2003, $70 million remained in the fee pool.

In contract modification 64 (together with the related changes in contract modification 66), the fee provisions were changed to an incentive fee format for FY2003-06. At this time, the contracting officer expected additional gross spending in FY2003, and upon that basis, the fee pool was expanded by $2 million to a total fee pool of $72 million. See Complaint, ¶ 1 (fee pool for FY2003-06 was $72 million). Subsequently, CH2M

formally forfeited any claim to approximately $6 million.

CH2M was paid approximately $47 million in fee for FY2003-06 out of the possible $66 million. CH2M seeks approximately $17 million in the two cases now in litigation, and has apparently abandoned any claim to the remaining $2 million.

The key point to remember from this chronology is that the fee pool was determined based upon estimates of gross contract payments to CH2M Hill. All contract work is fee-bearing. If it were not, the amount of fee available to CH2M Hill would have been far less than the amount of fee already paid to CH2M Hill.

For example, when contract modification 30 was entered, the fee pool was established based upon estimates of gross contract payments to CH2M Hill of approximately $360 million annually. In the complaint, CH2M alleges that $230,000,000 in annual costs is non-fee-bearing. Complaint, at ¶22. If this were correct -- if $230 million had been excluded from the estimated annual cost used to calculate the total fee pool -- then the total fee pool for the contract would have been only approximately forty percent of the actual amount calculated. In other words, the total fee pool for FY2001 through FY2006 would have been only about $42 million.

In contrast, DOE has paid CH2M Hill approximately $83 million in fee for the period FY2001-06. In other words, DOE has

paid CH2M Hill approximately double the maximum fee pool consistent with CH2M Hill's allegation.

CH2M Hill's invention of categories of work that are fee-bearing and categories that are non-fee-bearing is inconsistent with the contract.

### 3. The Incentive Fee Provision Was Not Derived From The Baseline

The incentive fee provisions at issue in this case were first added to the contract by modification 64 (executed September 30, 2002) and companion modification 66 (executed November 20, 2002). Neither the specific tasks giving rise to incentive fee payments nor the specific amounts of incentive fee available for accomplishing such tasks were derived from the baseline for accomplishing several decades of work.

To the contrary, the re-stated scope of work contained in modification 66 expressly requires CH2M to do the planning necessary to develop a baseline budget and schedule for accomplishing incentive fee goals. See Modification 66 at pages C-2 and C-3. DOE committed "to use [its] best efforts and to cooperate in seeking the reduction of non-value-added requirements and processes that impede progress," Modification 66 at page C-15, but DOE did not commit to any particular schedule or budget or baseline plan.

Indeed, no baseline plan for achieving the incentive fees existed when modifications 64 and 66 were executed. The first baseline plan for meeting incentive fee priorities during the contract period was not sent by CH2M Hill to DOE until March 31, 2003. A2; see A1-33.[3]

Interestingly, the initial baseline by CH2M Hill did not propose any plan for achieving all incentive fee during the remainder of the contract. A22,34-35 (predicted a funding shortfall of $223 million).

II. COURT'S SECOND SET OF QUESTIONS:

**2. Plaintiff's complaint in the Vapors Claim, attached as an appendix to Defendant's Motion, includes detailed breakdowns of each performance based incentive ("PBI"), with specific indications of pertinent categories within each PBI and the corresponding fees Plaintiff alleges it could not earn (e.g. PBI 3.3c U201) in regard to the Funding Claim. Defendant's Motion ("Def.'s Mot.") at 24-37. To what sections of the Applicable Contract do these breakdowns most accurately correspond? Alternatively, please describe how this information was prepared and how it can be interpreted in the context of the Applicable Contract? Explanations should account for how the PBI breakdowns**

[3] "A" refers to defendant's appendix filed with this joint response.

**(applying to the Funding Claim) in the Vapors Claim appendix encompass the period between 2003 and 2006, while breakdowns in the Applicable Contract that appear to be relevant cover a period that is two years longer—2001 to 2006 (if the distinction is material).**

A. Response of CH2M Hill:

Appendix 4 to Defendant's Motion to Consolidate (Docket Entry 12-4) was not part of CH2M HILL's Complaint and the breakdowns referred to in the Court's question were not contained in CH2M HILL's Complaint. Rather, CH2M Hill understands that Appendix 4 is a spreadsheet that the DOE Contracting Officer used to keep track of PBIs that have been paid and PBIs that remain unearned.

As far as relating the information in Appendix 4 to the Contract, the starting points are Section J, Appendix D, PBI-3 and PBI-4, and Section J, Appendix P, "Provisional Payment of Fee Methodology/Criteria." See Docket Entry 31-17, page 3 of 13 (PBI-3); id. page 8 of 13 (PBI-4); id. page 11 of 13. However, those Contract sections do not include the level of detail found in Appendix 4 to Defendant's Motion, specifically, the fact that CH2M HILL planned to earn the fee in PBI-3 § 3.c by retrieving waste from 15 other single shell tanks including U Farm and C Farm tanks. Rather, that information is found only in the DOE-

approved Baseline. This is because some paragraphs of PBI-3 are open-ended in that they permit fee to be earned by retrieving waste from unspecified tanks (to the exclusion of certain tanks). See Docket Entry 31-17, page 5 of 13, § 3.c (relating to waste retrieval from 15 unspecified tanks). Neither the PBI nor Appendix P identifies which 15 tanks are covered. See id. page 12 of 13, line 3.3.c.

Neither the case before this Court nor the Vapors Appeal (Civilian Board of Contract Appeals ("CBCA") No. 708) seeks any damages for fee associated with FY2001 or FY2002.

Below, Defendant makes numerous arguments relating to whether CH2M HILL has or can prove causation and damages. Needless to say, CH2M HILL disagrees with Defendant's arguments. However, because CH2M HILL understands that the issue before the Court at the moment is consolidation, and not the merits, CH2M HILL will not engage Defendant in a debate of the merits of CH2M HILL's claims.

The only point in Defendant's discussion of the merits which requires comment is the suggestion that the Funding Claim is based on one hypothetical sequence of events and the Vapors Claim is based on a different hypothetical sequence of events. There is no truth to that assertion. The Funding Claim seeks the fee associated with discrete milestones (U-Farm tanks and other non-

tank work) that DOE prevented CH2M HILL from achieving. CH2M HILL's plan for achieving those milestones is not hypothetical at all, but rather was set forth in the Baseline and was well-known to DOE. The Vapors Claim seeks fee associated with different milestones (C-Farm tanks). Again, CH2M HILL's plan for achieving those milestones is not hypothetical; rather, it also was in the Baseline and was well-known to DOE. See also page 19 infra.

B. Response Of The United States:

We agree that CH2M does not seek fee for work during FY2001 or FY2002. The incentive fee provisions first added to the contract in the fall of 2002 by modifications 64 and 66 apply to FY2003-06.[4]

The common premise in both the Vapors Claim and the Funding Claim is that DOE breached its commitment "to use [its] best efforts and to cooperate in seeking the reduction of non-value-added requirements and processes that impede progress," Modification 66 at page C-15, by requiring CH2M Hill to spend time and money on worker protection (vapors claim) and a hodge-

---

4

The incentive fee criteria were later amended in light of experience. Modifications 79 and 100; see Modifications 115 and 116 (changes to settle claims). In general, the changes to the incentive fee criteria were made to make it easier for CH2M Hill to earn fee. Indeed, one change was made to permit CH2M Hill to earn fee for vapors-related activities. Modification 100 (PBI-3, item 6).

podge of other matters (more than 20 items identified in the funding claim submitted to the contracting officer). Similarly, the Funding Claim includes a further allegation that DOE breached its duty to cooperate by not seeking more appropriations more aggressively for FY2006.

All these allegations are without merit. However, even assuming for the sake of argument that CH2M Hill could demonstrate liability, there is a common issue of causation and damages. If CH2M Hill had had some amount of additional funds at some point in time, what incentive fee goals (if any) could CH2M Hill have reached before the conclusion of FY2006?

CH2M Hill has failed to offer any coherent explanation of causation and damages in either claim. Instead, in both cases, CH2M Hill calculates the same estimated cost average based, it appears, upon its experience completing the first few tank tasks (which are very different from the uncompleted incentive tasks, even though the labels for the tasks in the contract sound similar). CH2M Hill assumes that all the uncompleted incentive tank tasks could have been accomplished for the same per-unit cost. In both cases, CH2M Hill further assumes that the work could have been completed for its hypothetical cost within the remaining contract period.

The damages assumption is flawed in both claims. It is

flawed with respect to specifically-listed tanks in the Funding claim, and it is flawed with respect to unidentified tanks in the Vapors claim, but it is equally flawed in both cases.

Furthermore, the segregation of the two claims into separate litigations makes a coherent trial of causation and damages impossible in both forums. There could have been only one alternate performance. It is irrational to assume one sequence of activity during FY2003-06 (if additional money had been provided) for the purposes of the Vapors Claim trial, and then to assume a different sequence of activity during the same period (if additional money had been provided) for the Funding Claim trial. Both scenarios would be inaccurate because they would assume only a portion of the additional money that allegedly would have been available. Furthermore, there is a substantial likelihood of inconsistent decisions because the deciding officials may reach very different conclusions about likely schedule results.

III. COURT'S THIRD SET OF QUESTIONS

**3. Unlike its description of the unearned PBI fees underlying the Funding Claim, Plaintiff does not appear to have provided a similar description of the specific PBI fees that total the $7,080,000 sought in the Vapors Claim. In fact, the only such description of which the Court is currently aware is**

**the "Breakdown of Vapors Claim" provided on the last page of the appendix to Defendant's Motion, which lists a total claim of $7,235,000 instead of $7,080,000. Def.'s Mot. at 43. Citing to provisions in the Applicable Contract or the previously described appendix to Defendant's Motion, what specific PBIs are the subject of Plaintiff's $7,080,000 Vapors Claim? Please specify corresponding fee amounts as well. To what extent, if at all, do the unearned PBI fees underlying the Vapors Claim overlap with those sought in the Funding Claim?**

A. Response Of CH2M Hill:

The $7,080,000 sought in the Vapors Appeal consists of a request to be paid fee on certain construction and other work associated with the resolution of legacy vapors issues, plus fee that would have been earned for retrieving waste from 3.6 single shell tanks had funds not been diverted to resolution of legacy vapor issues. Because of those legacy vapor issues, CH2M HILL was prevented from even beginning retrieval from any of the remaining single shell tanks ("SSTs") listed in the Baseline as potential objectives during this period. (From those SSTs, CH2M HILL most likely would have selected C Farm tanks from which to retrieve waste, as reflected in Appendix 4 to DOE's Motion to Consolidate.) Because there were so many tanks from which to choose, but CH2M HILL was never permitted to reach the point of

selecting specific tanks, the Vapors Claim does not identify specific tanks. In contrast, the unearned fee sought in the Funding Claim is specifically identified with work objectives(including but not limited to tanks) that had been started and which were actively being undertaken in the field in 2005, but which were stopped because of the funding shortfall.

Regarding the figure of $7,235,000 versus $7,080,000 for the Vapors Claim, CH2M HILL submitted its certified claim on October 12, 2006 with the higher of those amounts and amended the claim on December 20, 2006 to the lower of those amounts. CH2M HILL's appeal in CBCA 708 seeks only the lower amount. The basis for the $155,000 difference is in the record in CBCA 708.

Regarding the last part of the above question, the unearned PBI fees underlying the Vapors Claim do not overlap with those sought in the Funding Claim. As stated in paragraph 30 of the Declaration of Daniel B. Cartmell (Docket Entry 14, filed by CH2M HILL in opposition to Defendant's Motion to Consolidate):

> The Vapors Claim includes fee associated with four of the fifteen tanks. The Funding Claim includes fee associated with four separate (additional) tanks out of the fifteen.

In greater detail, the explanation of and support for Mr. Cartmell's statement is as follows: PBI-3.3.c permitted CH2M HILL to earn fee of $825,000 per tank by retrieving waste from

each of 15 unspecified tanks (to the exclusion of certain tanks). See Docket Entry 31-17. page 5 of 13, § 3.c. Neither the PBI nor the Provisional Fee table identifies the specific 15 tanks to be retrieved. According to Appendix 4 to Defendant's Motion, CH2M HILL in fact earned and was paid $800,000 of the $825,000 fee potentially available for Tank C103, and $0 of the fee available for the other 14 tanks just listed. In the claim which is the subject of the Funding case, CH2M HILL identified the four U-Farm tanks (U-201, U-202, U-203 & U-204) as the four tanks from which it was prevented from retrieving waste by the events described in the Funding Claim which CH2M HILL submits were changes to the Contract. As stated above, prior to March of 2005 these four tanks were being actively prepared for retrieval, including active field work to construct the retrieval systems for the U-200 tanks. This work was stopped because of the funding shortfall. DOE specifically identified the U-200 tanks as being impacted by funding shortfall in a presentation to Hanford Advisory Board on March 9, 2005. This is distinguished from the Vapors case, which is limited to the claim that because of the changes made to resolve legacy vapors issues not originally included in the baseline, CH2M HILL could not initiate retrieval from other non-specific tanks covered by PBI-3.3.c.

B. Response Of The United States:

The overlap is in the proof of causation and damages. See our response to the Court's second set of questions.

As we described in more detail in our earlier answer, CH2M Hill proposes to prove its ability to earn fee based upon hypothetical average costs. This is unreasonable. Even assuming that the Court or the board were to find that CH2M Hill should have had more funding available during FY2003-06, CH2M Hill must demonstrate what it would likely have accomplished during that time with that money. In order to make a coherent analysis, a decision-maker must review a consolidated presentation.

## IV. COURT'S FOURTH SET OF QUESTIONS

**4. The Applicable Contract incorporates by reference Section 52.243-2 of the Federal Acquisition Regulations ("FAR"), which allows a contracting officer to "make changes within the general scope" of a contract in exchange for certain equitable adjustments. FAR § 52.243-2; Applicable Contract §§ I 63, I 183 (Modification M030), I 64 (Modification M082); see also Funding Claim Complaint ¶ 33; Vapors Claim Complaint ¶ 42. The Vapors Claim complaint identifies the DOE contracting officer who ordered the work on vapors issues allegedly beyond the Applicable Contract's scope as Mr. Roy Schepens, manager of DOE's Office of River Protection. See Vapors Claim Complaint ¶¶ 47-53, 58. To**

**what extent was Mr. Schepens involved in ordering the extra non-fee-bearing work alleged in Count I of the Funding Claim? See Funding Claim Complaint ¶¶ 34, 48.**

A. Response Of CH2M Hill:

Mr. Schepens was the Head of the Contracting Activity ("HCA") during the time period covered by both claims. In that capacity, he was one of the individuals involved in directing work that is the basis for the Funding Claim.

Though not directly responsive to the Court's inquiry, CH2M HILL does find it necessary to clear up some confusion evident in Defendant's response below. First, CH2M HILL does not claim that the direction giving rise to the Vapors Claim was outside the broad scope of the Contract in the sense of being a cardinal change. Rather, as Defendant admits, CH2M HILL had the right – indeed, the obligation -- to plan the work. That plan is the Baseline. By approving the Baseline, DOE gave CH2M HILL the right to perform its own plan and thereby earn fee. Mr. Schepens' direction forced CH2M HILL to deviate from that plan, thereby preventing CH2M HILL from earning the agreed upon fee. Mr. Schepens direction was outside the parties' expectations as reflected in the "plan" (i.e., the Baseline) and therefore was a change.

Regarding Defendant's discussion of whether DOE abused its

discretion or acted unreasonably by adding non-value added requirements, CH2M HILL does not agree that these are the relevant standards vis-à-vis a Changes claim.

B. Response Of The United States:

First, with all due respect, the Court has overlooked the relevant scope of work provision. The scope of work was restated to reflect, among other things, the new incentive fee priorities (set forth in modification 64) in modification 66. Modification 66, at pages C-1 through C-24.

Second, the letter cited by CH2M Hill in its Vapors complaint at paragraph 58 is a letter of direction to the contractor, but it does not address any issue outside the scope of work.[5] The scope of work is broad, and requires CH2M Hill both to plan the work and to perform it. See Modification 66, at page C-2 to C-4 (CH2M Hill is responsible for planning the work). None of the work performed by CH2M Hill during FY2003-06 fell outside the broad planning and performance requirements in the scope of work. Indeed, counsel for CH2M Hill admitted during the hearing with this Court on February 5, 2008 that all the work

---

5 The letter cited at paragraphs 47-53 of the Vapors complaint is not to CH2M Hill, and does not order any work. To the extent that the letter might be deemed relevant to such issues, we note that it was sent by DOE two weeks prior to CH2M Hill's submission of a baseline on March 31, 2003. See A2.

performed by CH2M Hill fell within the contract's scope of work.

The letter cited by CH2M Hill at page 58 of its Vapors complaint is entirely consistent with the scope of work. The contract expressly states a priority for worker safety in many places. E.g., Modification 66, at C-1 ("Success in achieving these outcomes shall consider the following factors: Protection of worker safety and health . . .").

To the extent that CH2M Hill has stated a claim upon which relief might be granted in the Vapors Claim, CH2M Hill must prove that DOE failed to use its "best efforts" to cooperate "in seeking the reduction of non-value-added requirements." Modification 66, at C-15. In other words, CH2M Hill must prove at least two things: (1) the worker protections were "non-value-added requirements," and (2) DOE knew that the worker protections were "non-value-added requirements," and so abused its discretion, thus failing to meet the "best efforts" standard.

It is unlikely that evidence concerning Mr. Schepens will be relevant to the first element. Evidence concerning Mr. Schepens may be relevant to the second element.

The same contractual standard applies to the more than 20 miscellaneous allegations set forth in the Funding Claim. In each case, CH2M Hill must prove a "non-value-added requirement," and then prove that DOE knowingly insisted upon such an

unreasonable requirement. Again, it is unlikely that evidence concerning Mr. Schepens will be relevant to the first element. Evidence concerning Mr. Schepens may be relevant to the second element.

V. COURT'S FIFTH SET OF QUESTIONS

**5. Seeking equitable adjustment for breach of Defendant's duty to cooperate, the Vapors Claim and the Funding Claim contend that DOE denied Plaintiff's Baseline Change Requests "to mitigate the cost and schedule effects of the added requirements" for work allegedly outside of the Applicable Contract's scope. See Vapors Claim Complaint ¶ 81; Funding Claim Complaint ¶ 64; see also Vapors Claim Complaint ¶ 70; Funding Claim Complaint ¶ 42. Citing to Section C.2.A(3) of the original contract and Section C.2(a)(2)(viii) of the Applicable Contract (Modification A066), both complaints also mention the requirement that a DOE contracting officer approve Baseline Change Requests. Vapors Claim Complaint ¶ 35; Funding Claim Complaint ¶ 31. Were the respective Baseline Change Requests denied by the same DOE contracting officer/s?**

A. Response Of CH2M Hill:

Baseline Change Requests ("BCRs") are not "denied" by contracting officers; in some cases they are "not approved at this time," and in other cases they are "returned." For example,

Baseline Change Request RPP-05-057 (the "Vapors BCR") was not formally denied by DOE. Rather, it was "returned without action," in part on the grounds that it contained "insufficient information." The cover letter was signed by a DOE employee named Howard Gnann "for" HCA Roy Schepens. Mr. Gnann was not a contracting officer. The nominal contracting officer, Ms. Cloette Reid, testified in her deposition in CBCA 708 (page 58) that she never saw the Vapors BCR when it was submitted or prior to its being returned to CH2M HILL.

With respect to the BCRs connected to the Funding Claim, Mr. Schepens signed the cover letters that returned the BCRs.

With respect to Defendant's assertions below regarding whether work was out-of-scope, please see CH2M HILL's explanation in #4 above.

Finally, Defendant's response again contains numerous incorrect statements that have no particular relevance to the question of consolidation. CH2M HILL does not intend its refusal to engage in a debate as an admission of anything appearing in any of Defendant's responses herein.

B. Response Of The United States:

The pleadings by CH2M Hill are confused and confusing.

First, there is no "scope of work" issue in either the Vapors Claim or the Funding Claim. All work performed by CH2M

Hill was within the broad scope of work set forth in section C of modification 66. Indeed, counsel for CH2M Hill made this judicial admission during hearing held on February 5, 2008.

Second, the substance of CH2M Hill's claims (in both cases) is that DOE breached its duty to use its "best efforts" to cooperate "in seeking the reduction of non-value-added requirements," Modification 66, at C-15, by refusing to eliminate certain work. Even assuming for the sake of argument that CH2M Hill has stated a claim upon which relief might be granted, its claims have nothing to do with the baseline or the processing of any baseline change request (BCR).

For example, in the Vapors Claim, the substance of CH2M Hill's claim is that DOE breached its duty to cooperate by requiring CH2M Hill to spend $99 million upon unnecessary worker protection. Whether the worker protection measures were "non-value-added requirements" within the meaning of the contract, and whether DOE breached its duty to exercise "best efforts" by directing CH2M Hill to employ such protections, have nothing to do with the baseline or any BCR.

Indeed, the BCR cited by CH2M Hill -- BCR No. RPP-05-057 -- was not even submitted by CH2M Hill until 2005. This was long after DOE had directed CH2M Hill to increase its worker protection efforts and long after most of the disputed costs for

worker safety had been incurred. Moreover, CH2M Hill's purpose in submitting this BCR was not to avoid the increased cost of protecting workers, to dispute the requirement, or to suggest alternative actions. Instead, the purpose of this BCR was merely to increase the costs for worker protection included in the baseline -- and so reduce the percentage by which CH2M Hill was performing over the planned budget in the baseline. In summary, this BCR was for cosmetic reasons.

For another example, the substance of the "diverted funding" portion of the Funding Claim is that there were more than 20 items of work that DOE should have eliminated in order to satisfy its duty to use best efforts to reduce non-value-added requirements. As with the Vapors Claim, CH2M Hill bears the burden to prove that each of these miscellaneous items of work was a "non-value-added requirement," and that DOE breached its duty to use its "best efforts" to reduce the requirement. Again, the relevant issues are unrelated to the baseline or the BCR processing.

Furthermore, eight of the miscellaneous issues listed in the Funding Claim were never reflected in any BCR submission. Obviously, CH2M Hill cannot reasonably suggest that its claim with regard to any of these eight work items is based upon the improper processing of a BCR.

With regard to the remaining miscellaneous BCRs, DOE promptly responded. Indeed, many of the BCRs were approved! Finally, even assuming for the sake of argument that one or more of the miscellaneous Funding Claim BCRs was not promptly addressed by DOE, this fact would be irrelevant to a determination of whether the miscellaneous matter was a non-value-added requirement, and, if so, whether DOE breached its duty to exercise best efforts to reduce it.

Third, CH2M Hill has provided a misleading description of the processing of BCRS. There are detailed procedures for processing BCRs. Essentially, there are three different categories of BCRs, and they are processed in different ways. Some are processed internally at CH2M Hill, with no involvement by DOE. Because the BCR questions are a red herring -- the real issue raised by the two claims is whether DOE breached its duty to use best efforts to reduce non-value-added requirements -- it is not necessary or helpful to detail the various procedures.

Finally, we note that the Court, in its question, appears to misconstrue paragraph C.2(a)(2)(viii) of modification 66. Contrary to the implication of the Court's question, this paragraph does not state any "requirement that a DOE contracting

officer approve Baseline Change Requests." Indeed, there is no mention of a contracting officer in the paragraph.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W.
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

Attorneys for Defendant

S/ Kenneth B. Weckstein
KENNETH B. WECKSTEIN
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
Tele: 202-861-1860
Fax: 202-296-2882
kweckstein@ebglaw.com

Attorney for Plaintiff

Of Counsel:

Shlomo D. Katz
Epstein Becker & Green, P.C.
1227 25th Street, N.W.,
Suite 700
Washington, DC 20037
Telephone: (202) 861-1860
Facsimile: (202) 861-3509
skatz@ebglaw.com

Stanley J. Bensussen
Chief Counsel
CH2M HILL Hanford Group, Inc.
P.O. Box 1500, MSIN H6-18
Richland, WA 99352
Telephone: 509-372-3800
Facsimile: 509-372-1397

March 4, 2008

CERTIFICATE OF FILING

I hereby certify that on March 4, 2008 a copy of the foregoing "JOINT RESPONSE TO ORDER FOR SUPPLEMENTAL INFORMATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier